

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-6-1997

# In Re: Edward Cohen v.

Precedential or Non-Precedential:

Docket 96-5155

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation
"In Re: Edward Cohen v." (1997). *1997 Decisions.* Paper 34.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/34

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 96-5155
_____


IN RE: EDWARD S. COHEN, Debtor,


EDWARD S. COHEN,

     Appellant,

     -vs-

HILDA DE LA CRUZ; NELFO C. JIMENEZ;
MARIA MORALES; GLORIA SANDOVAL; HECTOR SANTIAGO;
SANTIA SANTOS; ELBA SARAVIA;
ELVIA SIGUENZIA; ENILDA TIRADO.

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Case No. 95-cv-04958)
_____

Submitted Under Third Circuit LAR 34.1(a)
October 10, 1996
Before:  MANSMANN and GREENBERG, Circuit Judges,
and HILLMAN, District Judge*



(Filed February 6, 1997)




*    Honorable Douglas W. Hillman of the United States District
Court for the Western District of Michigan, sitting by
designation.


1

Edward S. Cohen (pro-se)
6021 Fountain Park Lane
Apt. #10
Woodland Hills, CA  91367

        Appellant

GREGORY G. DIEBOLD, Esquire
Hudson County Legal Services Corp.
574 Newark Avenue
Jersey City, New Jersey  07306

        Attorneys for Appellees

        _____

        OPINION OF THE COURT
        _____


HILLMAN, District Judge.

        Edward S. Cohen appeals from the order of the New Jersey District Court affirming the bankruptcy judge's determination that certain debts were nondischargeable in bankruptcy because they were obtained by fraud, as defined in 11 U.S.C. § 523(a)(2)(A).  Because we conclude that section 523(a)(2)(A) excludes punitive as well as compensatory damages from discharge, we will affirm.

                          **I.**

        In 1985, appellant, Edward Cohen ("Cohen"), and his father, Nathan Cohen, purchased an 18-unit residential apartment building at 600 Monroe Street in Hoboken, New Jersey.  They held title to the Monroe Street property until December 1989.  The Cohens also owned several other residential properties: another

2

multi-family apartment building in Hoboken, one in Union City, two in Paterson, one in Jersey City and one in Newark.

The Hoboken Rent Leveling Act (The Act) is a comprehensive rent control ordinance which governed the Monroe Street property. The rents set by the Cohens were approximately double what they could legally charge under the Act. Most of the tenants in the Monroe Street units were non-native speakers of English with little education.

In 1989, the Hoboken Rent Control Administrator determined that the Cohens had violated the Act. The Cohens were ordered to refund amounts totaling $31,382.50. The amounts were not refunded and the Cohens failed to perfect an appeal from the determination of the Administrator. Thereafter, the Cohens filed for Chapter 7 bankruptcy, seeking to discharge these as well as other debts.

On February 14, 1991, the tenants filed an adversary proceeding against Edward Cohen in the bankruptcy court. They claimed that the debts owed to them were procured by fraud and were thus nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(2)(A). Additionally, each tenant sought a judgment for three times the amount of the refund pursuant to New Jersey's Consumer Fraud Act, N.J.Stat.Ann. §§ 56:8-1 to 8-9.

At trial, the plaintiffs testified that they had no knowledge of the legal amount of rent. Most were unaware that any rent control ordinance governed the property. Cohen admitted

3

that at the time he purchased the property, he was aware that the rent control ordinance existed. He claimed, however, that he never inquired about the requirements of the ordinance nor was he advised of its provisions. He testified that he was aware that he could not raise rents more than 6% per annum, but claimed to believe that he could charge new tenants any amount up to fair market value. In fact, the Act limited the amount of rent the Cohens could charge existing and new tenants.

After hearing the testimony, the bankruptcy judge determined that the debts were nondischargeable and that the Consumer Fraud Act applied. The court found that Cohen, despite being represented by counsel, recklessly made no effort to investigate the statute and selectively inquired about its application. The court further found that Cohen conveniently understood that the ordinance allowed him to surcharge his tenants for increases in water bills and taxes and he knew where he could apply for such relief. Cohen claimed, however, that he did not think to investigate how much he could charge new tenants. Based on these facts, the bankruptcy court found that Cohen had selectively understood and applied the provisions of the ordinance that were to his benefit, but wilfully failed to ascertain the less advantageous provisions. On the basis of Cohen's admittedly selective understanding of the statute, the bankruptcy court concluded that he had committed fraud within the meaning of the bankruptcy code. The court also held that Cohen's

4

conduct violated the New Jersey Consumer Fraud Act, N.J. Stat. Ann. 56:8-1, and that Cohen was statutorily liable for treble damages. The bankruptcy court held that the treble damage award also was nondischargeable in bankruptcy, and it entered a total judgment for $94,147.50. The district court affirmed. In re Cohen, 191 B.R. 599 (D.N.J. 1996).[1]

In his appeal, Cohen contends that the district court erred in affirming the order of the bankruptcy court. First, he asserts that, in finding that appellant's conduct amounted to nondischargeable fraud under 11 U.S.C. § 523(a)(2)(A), the bankruptcy court and the district court applied incorrect principles of law and made clearly erroneous factual findings. Second, he argues that, even if his conduct amounted to fraud under the bankruptcy code, it did not constitute a violation of

---

[1] The district court had jurisdiction to hear this case pursuant to 28 U.S.C. § 158(a). Because the bankruptcy court first heard this case, Bankruptcy Rule 8013 governed the district court's standard of review:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses.

Our jurisdiction rests on 28 U.S.C. § 1291 and 28 U.S.C. § 158(d). 8013. We exercise plenary review over the district court's order, because a district court sits as an appellate court in bankruptcy court. In re Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995). We review the bankruptcy court's findings of fact for clear error. Id. We exercise plenary review over questions of law. Id.

the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1. Third, he contends that the treble damage provision of the New Jersey Consumer Fraud Act is a punitive damage award. As such, Cohen contends that the treble damage portion of the debt is dischargeable under 11 U.S.C. § 523(a)(2)(A).

We have carefully considered both the facts and the law and we find no error in the district court's conclusion that Cohen committed fraud within the meaning of 11 U.S.C. § 523(a)(2)(A) and N.J. Stat. Ann § 56:8-1. Both the bankruptcy court and the district court applied the correct principles of law, and the factual findings of the bankruptcy court were not clearly erroneous. Because Cohen's objections to the bankruptcy court's findings of fraud raise no substantial questions not fully addressed by the courts below, we affirm without discussion the district court's order affirming the bankruptcy judge's findings of fraud under both the bankruptcy code and the New Jersey Consumer Fraud Act.

However, because the question of whether punitive damages[2] are dischargeable under 11 U.S.C. § 523(a)(2)(A) is the subject of a split in the circuits, we will address that issue in full.

**II.**

---

[2] We assume without deciding for purposes of this opinion that the treble damages provision of N.J. Stat. Ann. § 56:8-9 is purely punitive and does not serve a compensatory function. But see Cox v. Sears Roebuck & Co., 138 N.J. 2, 24, 647 A.2d 454, 465 (N.J. 1994) (suggesting that purpose of treble damage and attorney fee awards was partly compensatory).

Section 523(a) of the federal bankruptcy statute provides limited exceptions to the general dischargeability of debts of eligible claimants under the statute. Specifically, section 523(a) sets forth sixteen types of debts that are nondischargeable under the code. The subsection at issue here -- 523(a)(2)(A) -- originally excepted from discharge any debt "for obtaining money, property [or] services . .. by . . . actual fraud. . . ." Federal courts interpreted this provision to include punitive as well as compensatory damages within the exception to discharge. See, e.g., In re Maxwell, 51 F.R. 244, 246 (Bankr. S.D. Ind. 1983); In re Carpenter, 17 B.R. 563, 564 (Bankr. E.D. Tenn. 1982). Cf. Birmingham Trust Nat. Bank v. Case, 755 F.2d 1474, 1477 (10th Cir. 1985).

Congress amended this provision in 1984, thereby giving rise to the issue we now address. See Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L.No. 98-353, 1984 U.S.C.C.A.N. (98 Stat.) 333, 376. We must determine whether punitive damages are nondischargeable under the second of these exceptions, which provides in relevant part:

(a) A discharge under . . . this title does not discharge an individual debtor from any debt --

. . .

(2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by --

7

                        (A) false pretenses, a false
                                representation, or actual
                                fraud . . . .

11 U.S.C. § 523(a)(2)(A) (emphasis added).

         A number of courts, including two courts of appeals,
have interpreted this provision and have come to conflicting
conclusions about its meaning.  Several courts, including the
Court of Appeals, for the Ninth Circuit, have held that, by
including the phrase "to the extent obtained by" in the
exception, Congress intended to limit the exception strictly to
compensatory damages for the actual amount caused by the fraud.
Consequently, those courts have held that punitive damages for
fraud are dischargeable, notwithstanding § 523(a)(2)(A).  See,
e.g., In re Levy, 951 F.2d 196 (9th Cir. 1991), (the language of
the statute suggests that the subsection limits
nondischargeability to the amount of benefit to the debtor or
loss to the creditor the act of fraud itself created); In re
Auricchio, 196 B.R. 279, 289-90 (Bankr. D.N.J. 1996); In re
Bozzano, 173 B.R. 990, 998 (Bankr. M.D.N.C. 1994); In re Suter,
59 B.R. 944, 947 (Bankr. N.D. Ill. 1986).

         Other courts, however, including the Eleventh Circuit,
have concluded that the language of the statute is ambiguous and
that, because Congress' intent in adding the language is not
clear, all damages resulting from fraud, whether punitive or
compensatory, are nondischargeable under § 523(a)(2)(A).  See,
e.g., In re St. Laurent, 991 F.2d 672, 677-81 (11th Cir. 1993);

8

In re Roberti, 201 B.R. 614, 622-23 (Bankr. D. Conn. 1996); In re Winters, 159 B.R. 789, 790 (Bankr. E.D. Ky. 1993); In re Manley, 135 B.R. 137, 144-45 (Bankr. N.D. Okla. 1992). See also 3 Collier on Bankruptcy, ¶ 523.08 at 523-52 n.27 (15th ed. 1996) ("The phrase `to the extent obtained by . . . actual fraud,' which was added to section 523 in 1984, should not be read to limit a finding of nondischargeability only to the compensatory aspects of a fraud judgment."). Cf. In re Gerlach, 897 F.2d 1048, 1051 n.2 (10th Cir. 1990) (holding that, with respect to a fraudulently obtained extension of credit, the language "to the extent obtained by" had not altered the amount of debt made nondischargeable under § 523(a)(2)(A)). See also 3 Collier on Bankruptcy. ¶ 523.08 at 523-52 n.27 (15th ed. 1996) (The phrase "to the extent obtained by . . . actual fraud," which was added to section 523 in 1984, should not be read to limit a finding of nondischargeability only to the compensatory aspect of a fraud judgment.).

We find the careful analysis of the Eleventh Circuit to be more persuasive than that of the Ninth Circuit. We conclude that the language "to the extent obtained by" was not intended by Congress to limit the amount of debt considered nondischargeable under § 523(a)(2)(A). We therefore hold that debts caused by fraud under § 523(a)(2)(A) are nondischargeable in their entirety.

## A.    The Plain Meaning of the Statute

Liability under state law for damages caused by fraud, whether punitive or compensatory, clearly represents a debt within the meaning of the bankruptcy code.  In re Bugna, 33 F.3d 1054, 1058 (9th Cir. 1994); In re St. Laurent, 991 F.2d at 678. Under the Code, a "debt" is defined as "liability on a claim." 11 U.S.C. § 101(12).  A "claim" is further defined as a "right to payment, whether or not such right is reduced to judgment . . . ."  11 U.S.C. § 101(5)(A).  See In re St. Laurent, 991 F.2d at 678.  "A `right to payment' is `nothing more nor less than an enforceable obligation, regardless of the objectives . . . to [be] serve[d] in imposing the obligation.'"  Id. (quoting Pennsylvania Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 559 (1990)).

Despite the broad sweep of this definition of "debt," courts have held that punitive damages resulting from fraud as defined by § 523(a)(2)(A) are nevertheless dischargeable because, by including in § 523(a)(2)(A) the language "to the extent obtained by," Congress intended "to limit the nondischargeable debt to the amount `obtained by actual fraud.'"  In re Levy, 951 F.2d at 198 (quoting In re Ellwanger, 105 B.R. 551, 555 (B.A.P. 9th Cir.  1989)).  In In re Levy, the Ninth Circuit reasoned that, because punitive damages "do not represent losses to the victim of fraud or increases in the wealth of the debtor who engages in fraud," they "`are not a debt for fraud.'"  Id.

(quoting In re McDonald, 73 B.R. 877, 882 (Bankr. N.D. Tex. 1987)).

At the heart of the Ninth Circuit's analysis is an assumption that the words "to the extent obtained by" modify the word "debt." We disagree with such a reading of the statute.

First, the word "debt" appears in the general section preceding all sixteen specific exceptions to dischargeability. In contrast, the words "to the extent obtained by" follow most directly after a listing of other nouns: "money, property, services, or an extension, renewal, or refinance of credit." It is most sensible and most in accord with general linguistic analysis to apply a modifying phrase to the nearest objects, in this case "money, property, services, or an extension, renewal, or refinance of credit."

In addition, it strains the structure of the statute as a whole to conclude that the definition of the word "debt," which applies to all sixteen exceptions to dischargeability and elsewhere in the bankruptcy code, is altered by language contained in the second of these exceptions, and that the meaning of the word "debt" is different only with respect to that single exception. Indeed, one of the basic canons of statutory construction is "that identical terms within an Act bear the same meaning. "Thus, Congress' expansive definition of `debt' applies to each subsection of § 523(a), absent clear intent to the

11

contrary." In re St. Laurent, 991 F.2d at 680 (citations omitted).

We conclude that Congress intended the language "to the extent obtained by" to modify not "debt," but "money, property, services, and extension . . . of credit." This conclusion is reinforced when one analyzes the provision with specific attention to the items in the list other than "money" -- i.e., "property," "services" or "extension of credit." It may at first blush appear plausible that Congress intended to limit some damage portion of the nondischargeable debt when one asks whether the debt in issue is a "debt . . . for money, . . . to the extent obtained by the fraud." However, when one asks whether the debt is a "debt . . . for refinancing of credit, . . . to the extent obtained by the fraud," it is apparent that the meaning of "to the extent obtained by the fraud" is to distinguish between fraudulently and legally refinanced credit, not to limit the objectives being "serve[d] in imposing the obligation." Davenport, 495 U.S. at 559. See In re Manley, 135 B.R. at 145. So understood, the language appears not to distinguish actual from punitive damages, but "contractual debts tainted with fraud from debts for mere breach of contract or `failure to pay.'" In re Manley, 135 B.R. at 145.

In the instant case, Cohen obtained substantial sums in rent from plaintiffs, only $31,382.50 of which was obtained by fraud. As a result, the amount of Cohen's debt for this

12

fraudulently-obtained sum is nondischargeable. The dissent agrees with our analysis that "to the extent obtained by" modifies "money" not "debt." It suggests, however, that the amount in excess of $31,382.50 awarded as treble damages was not obtained by fraud and therefore is not within the exception. However, the statutory language specifically states that the "<u>debt for</u> . . . money . . . to the extent obtained by . . . fraud" is not dischargeable. One's debt for fraudulently obtained monies may and frequently does exceed the actual sum of the fraud. For example, the debt normally includes interest, costs of recovery and attorney fees, as well as compensatory and punitive damages. Under New Jersey law, one's debt for such fraudulently obtained monies includes three times the amount of the fraudulently obtained sum. Nothing in the language "to the extent obtained by" requires distinguishing between the theories of recovery under which the debt is owed.

We therefore conclude that the language on its face does not clearly limit nondischargeable damages under § 523(a)(2)(A) to compensatory damages only.

### B. <u>Legislative History</u>

Where, as here, statutory meaning is at best unclear, we look to the legislative history to resolve any conflict. <u>See</u> <u>Patterson v. Shumate</u>, 504 U.S. 753, 761 (1992) (stating that resort to statutory history is appropriate where language of statute is ambiguous or confusing). "The normal rule of

13

statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." Kelly v. Robinson, 479 U.S. 36, 47 (1986). In particular, the Supreme Court has observed that a court should "not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." Davenport, 495 U.S. at 563.

As the Tenth Circuit previously has observed about the 1984 amendments,

> there is no reason to conclude that the 1984 amendments were anything but technical and cosmetic. We have found no legislative history reflecting that Congress intended to significantly alter the rights and obligations of creditors and debtors governed by this section . . . .

In re Gerlach, 897 F.2d 1048, 1051 n.2 (10th Cir. 1990) (holding that "to the extent obtained by" was not intended to limit the amount of nondischargeable credit extensions). See also In re St. Laurent, 991 F.2d at 680.

Prior to the 1984 bankruptcy amendments, the statute provided that a debtor was not entitled to a discharge of "any debt . . . for obtaining money, property, services, or an extension, renewal, or refinance of credit, by . . . false pretenses, a false representation, or actual fraud . . . ." The language change in 1984 merely struck "obtaining" preceding "money," and added "to the extent obtained" at the end of the

14

list of things which may be obtained by fraud.  In this historical context, the language seems a simple (though arguably less clear) rewording of the earlier phrasing.

Nothing in the 1978 version of the statute suggests that punitive damages for fraud should be distinguished from the compensatory portion of such debt.  Instead, under the 1978 phrasing, subsection (2) of section 523(a) should be interpreted consistently with the other exceptions, which have been broadly construed to cover both punitive and compensatory portions of debt for culpable conduct, even by those courts that have rejected such a broad interpretation of the modified § 523(a)(2)(A).  See, e.g., In re Bugna, 33 F.3d 1054, 1058-59 (9th Cir 1994) (punitive damages nondischargeable under § 523(a)(4)); In re Britton, 950 F.2d 602, 606 (9th Cir. 1991) (punitive damages nondischargeable under § 523(a)(6)).  In fact, prior to the 1984 amendments, courts had held that punitive damages as well as compensatory damages for fraud were nondischargeable under § 523(a)(2).  See, e.g., In re Maxwell, 51 B.R. 244, 246 (Bankr. S.D. Ind. 1983) ("Punitive damages awarded pursuant to state law for actions which would render a debt nondischargeable, see 11 U.S.C.A. § 523(a)(2), (4), and (6), are nondischargeable in bankruptcy."); In re Carpenter, 17 B.R. 563, 564 (Bankr. E.D. Tenn. 1982) (both compensatory and punitive damages nondischargeable under § 523(a)(2).  Cf. Birmingham Trust Nat. Bank v. Case, 755 F.2d 1474, 1477 (10th Cir. 1985) ("[T]he plain

15

language of the statute suggests that dischargeability is an `all or nothing' proposition.").

The Supreme Court's dicta in Grogan v. Garner, 498 U.S. 279, 282 n.2 (1991), is not to the contrary. In Grogan, the Court specifically declined to address the question presently before us: "whether § 523(a)(2)(A) excepts from discharge that part of a judgment in excess of the actual value of money or property received by a debtor by virtue of fraud." Id. While the Court recognized that such a proposition was "arguable," it expressly avoided deciding the issue. The Court's mere acknowledgment of an arguable position not only is dicta, but also does not suggest any future direction of the Court. As a practical matter, the Grogan Court actually reinstated a district court's decision that a state court judgment for fraud, including punitive and compensatory damages, was nondischargeable under § 523(a)(2)(A).

We therefore conclude from the legislative history that Congress intended with § 523(a)(2)(A) to create an exception for a type of debt caused by limited, culpable conduct. Congress did not intend, however, that the amount of such debt or claim, including the theories of recovery for such conduct, was to be limited by the section.

## C.   Policy Considerations

Sound policy also supports our decision. First, in the absence of the fraud that gave rise to the nondischargeable,

16

compensatory portion of the debt, there would be no liability for punitive damages. "To discharge an ancillary debt which would not exist but for a nondischargeable debt seems erroneous." In re Roberti, 201 B.R. at 623 (quoting In re Weinstein, 173 B.R. 258, 273-75 (Bankr. E.D.N.Y. 1994)) (internal quotations omitted).

Second, our result is consistent with the "fresh start" policy of the bankruptcy code. As the Supreme Court has stated, "the opportunity for a completely unencumbered new beginning [is limited] to the "honest but unfortunate debtor." Grogan, 498 U.S. at 286-87. Where a debtor has committed fraud under the code, he is not entitled to the benefit of a policy of liberal construction against creditors. Id.; Birmingham Trust, 755 F.2d at 1477. Cf. In re Braen, 900 F.2d 621, 625 (3d Cir. 1990) ("Although it is true that the bankruptcy laws were generally intended to give troubled debtors a chance, the nondischargeability exceptions reflect Congress' belief that debtors do not merit a fresh start to the extent that their debts fall within § 523."), cert. denied, 498 U.S. 1066 (1991). We think it unlikely that Congress, in excepting fraud from dischargeability, "would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud." Grogan, 498 U.S. at 287.

Furthermore, the amount of actual damages in consumer fraud cases, although significant to the plaintiffs, is often not

17

large.  Without including treble damages in the nondischargeable debt, victims of fraud will have even greater difficulty obtaining competent legal representation to pursue adversarial actions in bankruptcy court and prevent fraudulent debtors from using the Bankruptcy Code to evade lawful state judgments.

Finally, we observe that our decision is consistent with the punitive damages at issue in this case.  Under New Jersey law, treble damages are statutorily mandated for every violation of the Consumer Fraud Act.  See Cox v. Sears, Roebuck & Co., 647 A.2d 454, 465 (N.J. 1994).  As a result, the debtor is fully aware at the time of his commission of a fraud of the full amount of the "debt" he will owe on a determination that he has committed such fraud.  In this practical, additional sense, treble damages should be nondischargeable as an indistinguishable component of the debt owed.

## III.

For the above reasons, we conclude that punitive damages are nondischargeable under 11 U.S.C. § 523(a)(2)(A). Accordingly, the district court's decision affirming the judgment of the bankruptcy court will be affirmed.

In re Cohen, No. 96-5155

GREENBERG, Circuit Judge, dissenting.

Judge Hillman obviously has written a thoughtful opinion. Nevertheless, I respectfully dissent insofar as the majority holds that the damages to the extent trebled are not dischargeable. In this opinion I will treat the trebled portion of the damages as punitive damages in accordance with the majority opinion.

11 U.S.C. § 523(a)(2)(A) provides that a discharge "does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, [or] a false representation . . . ." The initial issue on this appeal is thus whether "to the extent obtained" relates to "debt" or to "money, property, [or] services." The majority holds that "to the extent obtained" refers to "money, property, [or] services" and I agree. After all, it would be awkward to think that the debtor "obtained" a "debt," for what the debtor obtains is something of value, thus creating a debt.

But at that point I part company with the majority because treating "to the extent obtained" as referring to "money, property, [or] services," makes it clear to me that punitive damages are dischargeable, for the punitive damages do not reflect money, property, or services the debtor "obtained." Punitive damages are simply a penalty and are something a debtor

20

pays rather than obtains. Here, Cohen "obtained" only the overcharges which are reflected in the compensatory damages which we all agree are not dischargeable.

Furthermore, if Congress intended that punitive damages under section 523(a)(2)(A) were to be non-dischargeable, as the majority holds, it seems to me that the statute simply would read that "A discharge . . . does not discharge an individual debtor from any debt for false pretenses, [or] a false representation. . . ." That formulation would be consistent with treating punitive damages as part of the debtor's "debt." In other words, if punitive damages are not to be dischargeable, there is no need for the "money, property, services . . . to the extent obtained" provision in section 523(a)(2)(A). I believe that we should not construe a statute so as to render portions of it superfluous.

Congress used the structure that I suggest would support the majority's result in 11 U.S.C. § 523(a)(4) which recites that "A discharge . . . does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Thus, in a section 523(a)(4) case the exception to the discharge is not confined by a provision equivalent to the "money, property, services . . . to the extent obtained" provision in section 523(a)(2). There is a structure similar to section 523(a)(4) in 11 U.S.C. § 523(a)(6) which provides that "A discharge . . . does not discharge an individual debtor from any debt for willful and

21

malicious injury by the debtor to another entity or to the property of another entity."  It therefore follows that fiduciaries in the enumerated cases, embezzlers, thieves and persons who commit willful and malicious torts cannot obtain discharges of punitive damage awards.

Congress thus carefully distinguished the types of wrongdoing when it set forth the exceptions to a discharge.  I, like the majority, would honor that distinction by holding that "to the extent obtained" in section 523(a)(2) relates to "money, property [or] services" and not to "debt," but would go further and hold that the punitive damages simply are not "money, property, [or] services" as those three terms relate to something the debtor obtained.  Thus, punitive damages are dischargeable in cases coming within section 523(a)(2).  I point out that while I have reached my result through my own analysis, it is hardly innovative as I merely am taking the position taken by most other courts.  See In re Auricchio, 196 B.R. 279, 290 (Bankr. D.N.J. 1996).  ("Most courts have found that punitive damages awards are dischargeable under § 523(a)(2).") (collecting cases).

There is court of appeals support for my position for, as the majority points out, the Court of Appeals for the Ninth Circuit has reached a result opposite to that the majority reaches today.  See In re Levy, 951 F.2d 196 (9th Cir. 1991), cert. denied, 504 U.S. 985, 112 S.Ct. 2965 (1992); see also In re

Bugna, 33 F.3d 1054, 1058–59 (9th Cir. 1994).  That court in

Bugna explained the law as follows:

> This plain reading of section 523(a)(4) is consistent with our interpretation of other subsections within section 523(a).  We have interpreted section 523(a)(6), which contains language similar to that in section 523(a)(4), as barring discharge of punitive damages liability.  See In re Britton, 950 F.2d 602, 606 (9th Cir. 1991); In re Adams, 761 F.2d 1422, 1427–28 (9th Cir. 1985).  And, though we have said that section 523(a)(2) does not bar discharge of punitive damages, In re Levy, 951 F.2d 196, 199 (9th Cir. 1991), that section is clearly distinguishable:  '[U]nlike sections 523(a)(4) and 523(a)(6), [section 523(a)(2)] does not bar discharge of punitive damages.'  Id. at 198.  Congress specifically limited the application of section 523(a)(2) to 'debt . . . to the extent obtained by false pretenses, a false representation, or actual fraud.'  11 U.S.C. § 523(a)(2)(A) (emphasis added).  Because punitive damages are not obtained by fraud but rather imposed because of it, they are not restitutionary as required under section 523(a)(2).  Levy, 951 F.2d at 199.  Section 523(a)(4), like section 523(a)(6), conspicuously lacks this limiting language.

Bugna, 33 F.3d at 1058–59.  The majority criticizes the analysis

in Levy because Levy presumes "that the words 'to the extent

obtained by' modify the word 'debt'."  Majority typescript at 9.

 While I agree that "to the extent obtained by" does not modify

"debt," still it seems clear to me that the Court of the Appeals

for the Ninth Circuit correctly distinguished between section

523(a)(2) on the one hand and sections 523(a)(4) and (a)(6) on

the other.

23

I believe my proposed result is consistent with the fresh start policy of the Bankruptcy Code. While the majority expresses concern that a debtor acting fraudulently will escape the consequences of his or her action, I think it is important to understand how broadly fraud has come to be defined. See N.J. Stat. Ann. § 56:8-2 (West 1989) (definition of conduct wrongful under the Consumer Fraud Act). Consider fraud under RICO. As every federal judge knows, in RICO civil cases plaintiffs frequently allege mail fraud as the racketeering activity in situations in which no United States Attorney would seek a RICO indictment. See 18 U.S.C. § 1961(1)(B). In RICO cases, just as under the New Jersey Consumer Fraud Act, treble damages are recoverable. 18 U.S.C. § 1964(c). This case will come to be authority that the trebled portion of the damages in a civil RICO case are not dischargeable, even though the dispute leading to the judgment is essentially commercial, and the racketeering activity is mail fraud.

Indeed, in this case, while I have not dissented from the finding that Cohen committed fraud, his conduct was hardly shocking. The district court described Cohen's conduct as follows: "[Cohen] made an implicit representation regarding the rent he charged -- his silence coupled with the rental amount fixed constituted a representation that he was charging lawful rent." In re Cohen, 191 B.R. 599, 605 (D.N.J. 1996). Furthermore, the finding of fraud was not predicated on Cohen's

24

actual knowledge.  Rather, as the district court explained, it was based on his reckless disregard of the truth.

I recognize that Cohen's situation is not one that can generate much sympathy.  He was, after all, a landlord dealing with persons whose primary language was Spanish and who had little education.  Id. at 602.  Nevertheless, if "an implicit representation" can give rise to a non-dischargeable punitive damages judgment, in some cases poor or uneducated people may feel the thrust of our opinion as such persons may make "implicit representation[s]" just as Cohen did.  The majority's opinion may come to haunt such people seeking to make a fresh start.

_____