In re William SHAFFER, Jr., t/a Bill Shaffer Construction, Debtor.

Joseph ATCAVAGE and Jacqueline Atcavage, Plaintiffs,

v.

William SHAFFER, Jr., t/a Bill Shaffer Construction, Defendant.

Bankruptcy No. 5–95–00111.
Adv. No. 5–95–0367.

United States Bankruptcy Court,
M.D. Pennsylvania.

March 17, 1997.

Michael R. Mey, Scranton, PA, for Debtor/Defendant.

Robert T. Panowicz and Christine Trottini, Wilkes–Barre, PA, for Plaintiffs.

David Gniewek, Trustee in Bankruptcy, Milford, PA.

### OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

Joseph and Jacqueline Atcavage ("Plaintiffs") have filed a Complaint objecting to the dischargeability of a certain obligation they say is owed by William Shaffer, the Debtor.

The Debtor is the nephew of the Plaintiffs. The Plaintiffs and the Debtor entered into an agreement dated August 29, 1993 by which Bill Shaffer Construction, a trade name of the Debtor, would complete a residence for the Plaintiffs at 101 Watson Street, Wilkes–Barre Township, Luzerne County, Pennsylvania. The building was to be of a modular type manufactured by Northeast Homes Corporation, Hummelswharf, Pennsylvania, delivered on site, and finished by the Debtor. Implicit in the construction agreement was the understanding that the Debtor, William Shaffer, purchase the home on the Plaintiffs' behalf and finish it on site, after which the Debtor would be paid by the Plaintiffs. (See Defendant's Exhibit 7, paragraphs 3 and 9.) Financing for this construction was arranged through First Star Savings Bank. The closing occurred on November 2, 1993.

Curiously, on the following day, the Plaintiffs executed a Mortgage and Security Agreement in favor of the manufacturer of the modular home, Northeast Homes, effectively guaranteeing the Debtor's obligation to the manufacturer.

Unfortunately, upon delivery, in late 1993 or early 1994, the home arrived with improper support beams in place, which allowed a twisting and buckling during transport and placement on the foundation. As a result of this movement, numerous defects in the structure existed at the time of delivery.

The Debtor expended considerable extra time and money in addressing the damages caused by transport, some of which remain. Nevertheless, the Plaintiffs were sufficiently satisfied to authorize the release to the Debtor of all funds held by the mortgagee bank

which financed the construction. The Plaintiffs may not have been aware that Northeast Homes was partially unpaid for the modular by the Debtor.

Thereafter, the manufacturer, Northeast Homes, made demand on the Plaintiffs for the balance owed to them by the Debtor. That balance was $19,931.38.

Northeast Homes was in a position to pursue the Plaintiffs on two theories of recovery: first, by filing a mechanic's lien against the property notwithstanding the existence of a Stipulation Against Liens executed between the Debtor and the Plaintiffs; and second, by suing on the executed "Mortgage and Security Agreement" which obligated the Plaintiffs to pay for the house purchased from Northeast Homes Corporation by William Shaffer. The record indicates that, on March 10, 1995, Northeast Homes filed a mechanic's lien claim against the Plaintiffs.

While not disputing that they signed the Mortgage and Security Agreement, the Plaintiffs maintain that it was presented to them after closing when Bill Shaffer told them it was an "order form for the house." (Transcript of 6/25/96 at 20.) The Plaintiffs said they signed this document without reviewing it.

The Debtor, on the other hand, indicates in his testimony that the Plaintiffs read this document more than once and executed it only when they were sure of its meaning.

The Plaintiffs argue that these facts establish grounds for denying the Debtor the dischargeability of his obligation to the Plaintiffs.

The Complaint did not specify the subsection of 11 U.S.C. § 523 under which the Plaintiffs hope to succeed. The Court, at trial, focused on Section 523(a)(2) (fraud) and Section 523(a)(4) (fraud or defalcation while acting in a fiduciary capacity) as constituting the gravamen of their cause of action.

The Plaintiffs have the burden of proof by a preponderance of the evidence with regard to a complaint objecting to the dischargeability of a debt. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Since the overriding purpose of the Bankruptcy Code is to provide the debtor with a fresh start, exceptions to discharge are strictly construed against the creditor and liberally construed in favor of debtors. *In re Cohn,* 54 F.3d 1108, 1113 (3rd Cir. 1995). The benefit of a liberal construction is only available to the "honest" debtor and, therefore, a finding of fraud would deny the debtor of this advantage. *In re Cohen,* 106 F.3d 52, 58–59 (3rd Cir.(N.J.)).

While I do not completely understand the reason why the "Mortgage and Security Agreement" identified as Plaintiffs' Exhibit No. 1 was not executed at closing, I am satisfied that the presumption that one who has signed a document, has read and understood it, should be dispositive. *McCready's Estate,* 316 Pa. 246, 175 A. 554 (1934).

Neither side disputes the conclusion that the execution of this document on November 3, 1993, was a voluntary act by the parties. Further, the Court finds that both Plaintiffs and Defendant/Debtor are intelligent people capable of understanding the significance of the paperwork which bore their signature. The Plaintiffs should have been aware of the difference between a purchase order and a mortgage. On August 30, 1993, they executed a document entitled "Standard Purchase Order" for the structure at issue. (Defendant's Exhibit 2.) Furthermore, the day prior to the execution of the Northeast Homes mortgage, they executed a mortgage in favor of First Star Saving Bank. Moreover, the document that was shown to them on November 3, 1993, was the only document presented to them that day, which reduces the possibility that it was mistakenly signed. Neither Jacqueline Atcavage, Co–Plaintiff, nor Michael Richardson, witness to the Northeast Homes mortgage, testified at the time of trial. Both were signatories to the document.

The Court finds that the Debtor, William Shaffer, Jr., paid in excess of $25,000.00 to Northeast Homes toward payment of this modular home.

We now turn to the question of whether these facts are grounds for denying the dischargeability of any obligation that the Debtor/Defendant has to the Plaintiffs.

■ 11 U.S.C. § 523(a)(2) reads, in part, as follows:

## § 523. Exceptions to discharge.

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

In interpreting the meaning of "fraud," we will accept the guidance of a recent Supreme Court decision and turn to the Restatement (Second) of Torts § 537 (1976). *Field v. Mans*, — U.S. —, —, 116 S.Ct. 437, 443, 133 L.Ed.2d 351 (1995).

## § 537. GENERAL RULE

The recipient of a fraudulent misrepresentation can recover against its maker for pecuniary loss resulting from it if, but only if,

(a) he relies on the misrepresentation in acting or refraining from action, and

(b) his reliance is justifiable.

The Supreme Court of the United States in the case of *Field v. Mans,* indicates that, while "justifiable" reliance is a lower standard than "reasonable" reliance, "[j]ustifiability is not without some limits, however." *Citing* Restatement (Second) of Torts § 541 cmt. a. (1976). "Thus, if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed a defect."

This Court is satisfied that the "Mortgage and Security Agreement," which was supposedly surreptitiously shuffled before the Plaintiffs for execution, is but a "one-eyed horse" whose unsound nature would have been discovered by the most casual observation. Even though it was not included in the closing documents, that fact would have allowed for a more careful inspection of its terms.

What the Plaintiffs did by executing this agreement was to "guarantee" to the manufacturer the purchase price of the house. While this might have been an unwise decision in retrospect, it is not altogether an unusual situation. Pennsylvania has long protected the rights of suppliers whose material has been incorporated into a structure. 49 P.S. § 1301.

■ Neither can we find support for the Plaintiffs' position in the failure of the Debtor to advise the Plaintiffs of the delinquency owing Northeast Homes prior to the release of the final Request for Payment Release executed March 1, 1994. All parties were aware of the problems with the home when it was delivered. Further inquiry by the Plaintiffs into the payment status of Northeast Homes was warranted before the execution of the final Request. We simply cannot find that the Plaintiffs have met their burden of establishing fraud under Section 523(a)(2).

■ Neither can the Plaintiffs succeed under 11 U.S.C. § 523(a)(4) which reads as follows:

## § 523. Exceptions to discharge.

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

Most courts have suggested that establishing one as a "fiduciary" under the provisions of this section requires the existence of an *express* trust. *In re Librandi*, 183 B.R. 379, 385 (M.D.Pa.1995); *In re Wolfington*, 48 B.R. 920, 923 (Bankr.E.D.Pa.1985). Neither side suggests the existence of such a trust.

There is some authority that a resulting trust may be sufficient to sustain the burden of a plaintiff. *Goldberg v. New Jersey Lawyers' Fund for Client Protection*, 932 F.2d 273 (3rd Cir.1991)[1]. A resulting trust is not intimated by the parties.

---

1. *Goldberg* did not actually use the term "resulting trust." Nevertheless, the funds were received by Goldberg, a lawyer, for distribution to others. These circumstances raise the inference

Having examined the transcript and all exhibits, we see no evidence that would support a finding of the existence of any trust relationship between the Debtor/Defendant and the Plaintiffs. At best, we would be required to turn to constructive trust principles to find a so-called "trust." But as we know, a constructive trust is not a trust at all but an equitable remedy to address an unjust enrichment. *In re Sacred Hospital of Norristown,* 175 B.R. 543, 554 (Bankr.E.D.Pa. 1994). The record is devoid of any evidence of unjust enrichment by the Debtor.

It is based on these findings that I conclude that the Plaintiffs have not prevailed in carrying their burden of proving an exception to discharge.