**In re Brenda Kate STEWART–HARREL, Debtor.**

**No. 10–77244–WLH.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Jan. 25, 2011.

### ORDER ON TRUSTEE'S OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

WENDY L. HAGENAU, Bankruptcy Judge.

This matter comes before the Court on the Chapter 13 Trustee's Objection to Confirmation of the above-referenced Debtor's Chapter 13 plan [Docket No. 16]. The Chapter 13 Trustee succinctly states the question presented as follows:

Does a Chapter 13 extension plan meet the requirements of 11 U.S.C.

§ 1325(a)(3) and 11 U.S.C. § 1325(b)(1) if the Debtor does not propose to pay all available net monthly income to creditors?

The Trustee urges further that such a plan could only satisfy 11 U.S.C. § 1325(b)(1)(A) if interest were paid on all unsecured claims. The Court concludes that a plan which proposes to pay unsecured creditors in full, but without interest, satisfies the requirements of 11 U.S.C. § 1325(b)(1)(A), and, therefore, the Debtor is not required to pay all of her available net monthly income into a plan to satisfy a trustee's objection under Section 1325(b)(1). The Court holds further, however, that factual issues remain as to the Debtor's good faith under 11 U.S.C. § 1325(a)(3). Jurisdiction is appropriate in this case pursuant to 28 U.S.C. § 1334, and 28 U.S.C. § 151. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(L). The following constitutes the Court's findings of fact and conclusions of law under Fed. R. Bankr.P. 7052.

## FINDINGS OF FACT

The Debtor filed her voluntary petition under Chapter 13 of the United States Bankruptcy Code on June 11, 2010. The amended Chapter 13 plan filed on August 24, 2010 provides for a monthly plan payment of $1,157.00 and a 100% dividend to unsecured creditors to be paid after all other classes have been paid in full. The Debtor is an above-median income debtor, and the applicable commitment period for this Debtor is five (5) years. The Trustee estimates that, as proposed, the Chapter 13 plan will last approximately 51 months in total. The plan proposes to fund attorney's fees, priority taxes, a secured car claim, and general unsecured creditors

scheduled at $27,648.22. The parties acknowledge that the Debtor's available net monthly income (as calculated by Schedules I and J) is in excess of the plan payment, although there is some dispute as to exactly how much more in net monthly income the Debtor could contribute to fund a Chapter 13 plan. The plan payment is in excess of the projected disposable income calculated on Official Form 22C [1] which is $821.04. The Trustee filed an Objection to Confirmation of Plan [Docket No. 16] on August 2, 2010, and the matter came before the Court for a confirmation hearing on September 1, 2010. At the hearing, the parties asked to brief the legal issue addressed herein, which briefing has now been completed.

## CONCLUSIONS OF LAW

The Chapter 13 Trustee objects to the plan because the Debtor does not propose to pay 100% of her available net monthly income under the plan. As a result, it will take the Debtor almost 30 months longer to pay her unsecured creditors in full than if she paid 100% of her available net monthly income. The Trustee argues that under 11 U.S.C. § 1325(b)(1), since she has objected to confirmation of the plan, the Court may not approve the plan unless:

as of the effective date of the plan—(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make pay-

---

1. The United States Supreme Court's decision in *Ransom v. FIA Card Services, N.A.*, —— U.S. ——, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011), was issued after the briefing herein was com-

pleted. The parties' views of projected disposable income may have changed in light of that decision.

ments to unsecured creditors under the plan.

The Trustee argues the Debtor has not satisfied subsection (B) because the Debtor is not proposing to pay all of her projected disposable income during the applicable commitment period to unsecured creditors beginning on the date the first payment is due under the plan. The Trustee urges further that, in order to satisfy (A) of this section, the Debtor must include interest on the claims such that the present value of the payments equals the amount of the allowed claims. The Debtor, on the other hand, argues that she has satisfied prong (A) of Section 1325(b)(1) because she has proposed a 100% distribution to unsecured creditors.

■ The Trustee's and Debtor's arguments turn on the interpretation of the phrase, "as of the effective date of the plan" which precedes subsections 1325(b)(1)(A) and (B). The Trustee argues that (A) should be read "unless the value, [as of the effective date of the plan,] of the property to be distributed under the plan on account of such claim is not less than the amount of such claim". The Trustee argues this is the same language as in Section 1325(a)(5)(B)(ii), which requires, "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim" be not less than the allowed amount of such claim. At first blush, the Trustee's argument is logical since the words "as of the effective date of the plan" are the same but are only placed in a different order. However, upon further reflection and review of the case law, the Court believes the better interpretation is that the phrase, "as of the effective date of the plan" in Section 1325(b)(1) refers to the date as of which the court is to make the determination of either (A) (payment in full) or (B) (payment of all projected disposable income).

■ The phrase "value as of the effective date of the plan" has been construed consistently by the courts as requiring a present value analysis of the distributions as compared to the face amount of the claim. *See Till v. SCS Credit Corporation,* 541 U.S. 465, 474 fn 10, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004); *Burgess Wholesale Mfg. Opticians, Inc.,* 721 F.2d 1146, 1147 (7th Cir.1983); *In re Hughes,* 2006 WL 2051847 (M.D.N.C.2006); *Corestates Bank, N.A. v. United Chem. Technologies, Inc.,* 202 B.R. 33, 52 (E.D.Pa.1996). This phrase appears, *inter alia,* in 11 U.S.C. § 1325(a)(4) (best interests of creditors test); 11 U.S.C. § 1325(a)(5) (cramdown of secured creditors); 11 U.S.C. § 1129(b)(2)(A), (B) and (C) (cramdown of secured creditors, unsecured creditors or interest holders in a chapter 11); and 11 U.S.C. § 1129(a)(7) (best interests of creditors test in the context of confirmation of a chapter 11 case). However, in each instance, the phrase is written as, "value, as of the effective date". Written this way, the phrase "as of the effective date" clearly modifies the word "value". By contrast, "as of the effective date" as used in 11 U.S.C. § 1325(b)(1) precedes the word "value". More importantly, the phrase "as of the effective date" in Section 1325(b)(1) precedes two subsections, either of which will satisfy a trustee's objection. Customarily, when there is a lead-in phrase and then two subsections underneath it, the lead-in phrase must apply to both subsections. *See Cohen v. De La Cruz (In re Cohen),* 106 F.3d 52, 57 (3rd Cir.1997). Reading the phrase "as of the effective date of the plan" to require the present value of distributions on the claims may make sense with respect to subsection (A) but would make no sense with respect to subsection (B). As the court in *Hamilton v. Lanning* says, "we are hesitant to adopt an interpretation of a congressional enact-

ment which renders superfluous another portion of that same law." *Hamilton v. Lanning,* — U.S. —, 130 S.Ct. 2464, 2474, 177 L.Ed.2d 23 (2010). The only interpretation of "as of the effective date of the plan" which makes sense to this Court, as applied to both subsections (A) and (B), is the date as of which the court is to determine whether either (A) or (B) is applicable and satisfies a trustee's objection.

In the recent Supreme Court case *Hamilton v. Lanning,* — U.S. —, 130 S.Ct. 2464, 177 L.Ed.2d 23, the Supreme Court analyzed how projected disposable income is to be calculated for purposes of 11 U.S.C. § 1325(b)(1)(B). In its analysis, the court stated, "Congress' decision to require courts to measure projected disposable income 'as of the *effective* date of the plan' is more consistent with the view that Congress expected courts to consider post-filing information about the debtor's financial circumstances." *Id.* at 2474. Thus, when applied to subsection (B) of Section 1325(b)(1), the phrase "as of the effective date of the plan" clearly applies to the date on which the court is to make the determination. It would make no sense for the lead-in phrase "as of the effective date of the plan" to have different meanings as to each of the following subsections. *Dewsnup v. Timm,* 502 U.S. 410, 422, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992)(stating "we have often invoked the 'normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning.'") (citations omitted); *In re Cohen,* 106 F.3d at 57 ("it strains the structure of the statute as a whole to conclude that the definition ... which applies to all sixteen exceptions to dischargeability and elsewhere in the bankruptcy code, is ... different only with respect to that single exception").

The Court notes also that the interpretation of "as of the effective date of the plan" in Section 1325(b)(1) as being a date for determination is consistent with *Collier's* analysis:

> [T]his subsection requires only payment of such claims in full, and not payment of property having a "value as of the effective date of the plan" equal to full payment. It does not require payment of the present value of the claim, though such payment may be independently required under the best interests of the creditors standard. ... If this had been Congress' intent, Congress would presumably have used the same language as it used elsewhere to indicate a present value test, "value as of the effective date of the plan". Also, there is no indication in the legislative history that a present value test was intended.

8 *Collier on Bankruptcy,* ¶ 1325.08[3], p. 1325–54; *see also In re Ross,* 375 B.R. 437 (Bankr.N.D.Ill.2007); *In re Jones,* 374 B.R. 469 (Bankr.D.N.H.2007); *In re Smith,* 196 B.R. 565 (Bankr.M.D.Fla.1996).

■ Based on the foregoing, the Court does not believe that the payment of interest to unsecured creditors is required to satisfy a trustee's objection under 11 U.S.C. § 1325(b)(1). As *Collier's* points out, however, the payment of interest may be required to satisfy 11 U.S.C. § 1325(a)(4). This section is known as the best interests of creditors test and does require that "the value, as of the effective date of the plan, of property to be distributed under the plan" equal the amount that would be paid on the claim in a Chapter 7 case. Thus, present value is clearly required to satisfy the best interests of creditors test. *See* 11 U.S.C. § 726(a)(5). The Trustee's construction of Section 1325(b)(1) would require the payment of interest to unsecured creditors in situations where the best interests of creditors

test did not, thus, changing the standard for confirmation from equaling the amount a creditor would receive under Chapter 7 to a requirement that the Chapter 13 plan exceed the amount a creditor would receive in a Chapter 7 liquidation. Moreover, the Court notes that 11 U.S.C. § 1322(a)(2) allows for deferred payment of priority claims but clearly no interest payment is required there. If the payment of interest were required under 11 U.S.C. § 1325(b)(1), it would have the effect of unsecured creditors receiving more under a Chapter 13 plan than a priority creditor. Finally, the Court notes 11 U.S.C. § 502 disallows any claims for unmatured interest and further that only 11 U.S.C. § 726 specifically requires the payment of interest. There is no similar provision in Chapter 13 or in Chapter 11. Instead, the requirement for the payment of interest is subsumed within the best interests of creditors test. The Court believes that is where it belongs and not as an additional element of confirmation under Section 1325(b)(1).

The Court recognizes that the Trustee has cited two cases where interest was required by the courts. However, in *In re Weiss*, 251 B.R. 453 (Bankr.E.D.Pa.2000), the court noted that the debtor was solvent and appeared to require the payment of interest under the best interests of creditors test in Section 1325(a)(4) rather than under Section 1325(b)(1). The case of *In re Rhein*, 73 B.R. 285 (Bankr.E.D.Mich. 1987) does appear to be on point with the Trustee's argument. The Court simply disagrees with the analysis and notes that the court in *Rhein* commented there had been no prior decisions on this issue.

■ For the foregoing reasons, the Court overrules the Trustee's objection to the plan based on Section 1325(b) and finds that the Debtor satisfied Section 1325(b)(1)(A) by proposing a 100% dividend to the unsecured creditors.

■ Next, the Trustee argues the Debtor's plan cannot be confirmed because the plan was not filed in good faith as required by 11 U.S.C. § 1325(a)(3). The Trustee argues that, because the Debtor is not committing 100% of her available net monthly income to the plan and is paying creditors out over a longer period of time, the plan is not filed in good faith. The Court is not inclined to issue a *per se* rule that a failure to pay 100% of available net monthly income is bad faith. The court in *In re Kitchens*, 702 F.2d 885 (11th Cir. 1983) discourages such *per se* rules. Rather, the court must review the totality of the circumstances in determining good faith. *See In re Shelton*, 370 B.R. 861 (Bankr.N.D.Ga.2007). A series of factors should be considered, which would include, in this case, the extent of the difference in payment and the reasons for the difference in payment. At the same time, however, payment of all projected disposable income as calculated on Form 22C does not end the inquiry. As the court in Shelton said, "Section 1325(a)(3) would be superfluous if good faith required merely technical compliance with the Code." *Id.* at 867.

The Trustee also raises additional aspects of the plan which, she posits, suggest the plan was filed in bad faith, including payments made on a Hummer ahead of unsecured creditors and on an accelerated basis. The Debtor's brief raises issues of extenuating circumstances. However, after reviewing the arguments, the Court cannot determine good faith simply based on the face of the plan and briefs of the parties. Both parties raise issues of fact. An evidentiary hearing will, therefore, be necessary. If the Trustee wishes to pursue her objection to the plan based on good faith, or any other objections, the Court requests that the Trustee notify the

Court and set an evidentiary hearing on the matter.