**In the Matter of Sheryl A. HIGHT–GOODSPEED, Debtor.**

No. 12–11333.

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

Oct. 31, 2012.

Scott W. Federspiel, Fort Wayne, IN, for Debtor.

### DECISION ON CONFIRMATION OF DEBTOR'S PROPOSED CHAPTER 13 PLAN

ROBERT E. GRANT, Chief Judge.

This matter is before the court with regard to confirmation of the debtor's proposed Chapter 13 plan. The trustee objected to confirmation claiming that the plan does not satisfy the requirements of § 1325(b)(1) of the United States Bankruptcy Code. 11 U.S.C. § 1325(b)(1). The issues raised by that objection have been submitted for a decision on stipulations of fact and the briefs of counsel.[1]

---

1. In her brief, the trustee also argued that the plan fails to comply with the best interests of creditors test of § 1325(a)(4). Since that contention was not raised in the trustee's original objection and the parties' stipulations do not address the distribution creditors might receive in a liquidation under chapter 7, the court should not and does not consider the argument.

■ Section 1325(b) is commonly called the "best efforts" requirement for confirmation and first became part of the Bankruptcy Code with the amendments passed in 1984. It was designed to deal with the issues created by plans that, either because of the debtor's circumstances or choice in drafting, would yield little or nothing for unsecured creditors. The idea was that when proposing a chapter 13 plan a debtor should be serious about repaying creditors and yet still permit confirmation of minimal or zero distribution plans if that was all the debtor could afford—hence the concept of a debtor's "best efforts." Section 1325(b) provides that a plan may not be confirmed over the objection of an unsecured creditor or the trustee "unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1).

There is no dispute that the disposable income requirement of this section has not been met. Under the plan as currently proposed, the debtor is paying $1,100 per month, for 60 months, while her disposable income is two to three thousand dollars a month more than that. Nonetheless, the plan specifically commits to paying all allowed unsecured claims in full and it is adequately funded to do so. Since the plan will pay unsecured creditors in full, the debtor argues that she has satisfied the requirements of § 1325(b)(1)(A) and does not have to pay all of her disposable income. In response, the trustee contends that, for debtors who do not wish to devote all of their disposable income to the plan, § 1325(b)(1)(A) requires not just that unsecured creditors be paid in full, but that they be paid in full with interest.

Although § 1325(b) has been part of the Bankruptcy Code for almost 30 years, and thousands of decisions address disposable income and the required plan term, there has been surprisingly little litigation over the value of the distribution to unsecured creditors. Only a handful of decisions address the requirements of § 1325(b)(1)(A) and they are divided. Some, such as *In re Parke*, 369 B.R. 205, 208 (Bankr.M.D.Pa. 2007); *In re Rhein*, 73 B.R. 285 (Bankr. E.D.Mich.1987); and *In re Luna*, 2012 WL 4679170, *2 (Bankr.W.D.Tex.2012), support the trustee. *See also, In re Derschan*, 1988 WL 1014957 (Bankr.D.N.D.1988) (discussing the issue under chapter 12). A somewhat greater number agree with the debtor. *See, In re Richall*, 470 B.R. 245, 249 (Bankr.D.N.H.2012); *In re Stewart–Harrel*, 443 B.R. 219, 222–24 (Bankr. N.D.Ga.2011); *In re Ross*, 375 B.R. 437, 444 (Bankr.N.D.Ill.2007); *Matter of Eaton*, 130 B.R. 74, 77–78 (Bankr.S.D.Iowa 1991). *See also, In re Coay*, 2012 WL 2319100, *4 (Bankr.C.D.Ill.2012). The commentators are also divided, with Collier supporting the debtor, 8 *Collier on Bankruptcy*, ¶ 1325.11[3] (16th ed.), while Norton and Lundin agree with the trustee. 7 *Norton Bankr. L. & Prac.* (3d ed.), § 151:19; Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, 4th edition, § 168. 1, at ¶ 6, Sec. Rev. June 7, 2004, www.Ch13 online.com.

■ This court's consideration of the issue must begin with the language of the statute. *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) ("the starting point for interpreting a statute is the language of the

statute itself."). Where a debtor is not paying 100 percent of its disposable income, a plan may not be confirmed over the objection of an unsecured creditor or the trustee unless:

... as of the effective date of the plan—(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim. 11 U.S.C. § 1325(b)(1)(A).

If one focuses only on the two lines constituting sub-paragraph (A) ("the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim") that reading will support the debtor. The value of the property to be distributed under the plan—100 percent of allowed unsecured claims—is not less than the amount of such claims. Yet, in interpreting the statute, the court should strive to give effect to all of its provisions, *Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 2125, 150 L.Ed.2d 251 (2001) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.' ") (quoting *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955)); *see also, United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988) ("Statutory construction ... is a holistic endeavor."), and that means it must consider both the language of sub-paragraph (A) as well as the introductory words preceding it, which apply to both sub-paragraphs (A) and (B). So, the court must decide what effect, if any, the words "as of the effective date of the plan" have upon the meaning that would otherwise be given to sub-paragraph (A).

The same phrase—"as of the effective date of the plan"—is found in several

places in chapters 11, 12 and 13 of the Bankruptcy Code. There, however, rather than appearing before the words "the value" the phrase comes after them, so that the complete text usually reads: "the value, as of the effective date of the plan, of the property to be distributed ... is not less than...." *See e.g.*, 11 U.S.C. §§ 1129(a)(7), 1225(a)(4), 1325(a)(4) (best interest of creditors test); §§ 1129(b)(2)(A)(i)(I, II), (B)(i), (C)(i), 1225(a)(5)(B)(ii), 1325(a)(5)(B)(ii) (cram down); § 1129(a)(9)(C)(i) (payment of priority claims). These provisions are uniformly interpreted to require a present value analysis of the proposed payments. In other words, if payments are being made over time, the debtor is required to pay interest to compensate for the delay.[2] *See, Till v. SCS Credit Corp.*, 541 U.S. 465, 469, 472–73, 124 S.Ct. 1951, 1955–56, 1958, 158 L.Ed.2d 787 (2004) (discussing § 1325(a)(5)(B)(ii)); *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 957, 117 S.Ct. 1879, 1882–83, 138 L.Ed.2d 148 (1997) (discussing § 1325(a)(5)(B)(ii)); *Rake v. Wade*, 508 U.S. 464, 469–70, 113 S.Ct. 2187, 2191, 124 L.Ed.2d 424 (1993) (discussing § 1325(a)(5)(B)(ii)); *United Savings Association of Texas*, 484 U.S. at 377, 108 S.Ct at 633 (discussing § 1129(b)(2)(A)(i)(II)). *See also, In re Airadigm Communications, Inc.*, 547 F.3d 763, 768–69 (7th Cir.2008) (§ 1129(b)(2)(A)(i)(II)); *Koopmans v. Farm Credit Services of Mid–America, ACA*, 102 F.3d 874 (7th Cir.1996) (§ 1225(a)(5)(B)(ii)); *In re Hardy*, 755 F.2d 75 (6th Cir.1985) (§ 1324(a)(4)); *In re Rimgale*, 669 F.2d 426, 430 (7th Cir.1982) (§ 1324(a)(4)); *Matter of Burgess Wholesale Mfg.*, 721 F.2d 1146, 1147 (7th Cir. 1983) (§ 1129(a)(9)(C)). In the court's

---

**2.** In the event of a dispute over the proper rate of interest, the mechanism for making that determination is laid out in *Till v. SCS* *Credit Corp.*, 541 U.S. 465, 478–80, 124 S.Ct. 1951, 1961–62, 158 L.Ed.2d 787 (2004).

opinion, the meaning of those words is not changed by relocating the phrase "as of the effective date of the plan." The two statements "the value, as of the effective date of the plan, of the property to be distributed ..." and "as of the effective date of the plan—the value of the property to be distributed ..." have the same meaning. It seems that § 1325(b)(1)(A) is phrased somewhat differently because Congress apparently wanted the concept of the effective date of the plan to apply to both the valuation of the distribution under (A) and to the disposable income alternative of (B) and by putting the phrase into (b)(1) it was able to say that once rather than twice. Furthermore, when Congress wanted payment in full without requiring the payment of interest needed to yield a present value it said so. *See e.g.,* 11 U.S.C. §§ 1322(a)(2) ("full payment, in deferred cash payments, ..."); 1325(b)(4)(B) ("payment in full ..."); 1222(a)(2) ("full payment, in deferred cash payments, ...").

Most of the decisions that come to a contrary conclusion do so with little discussion and seem to entirely overlook the language in (b)(1) that precedes sub-paragraph(A), almost denying that the words "as of the effective date of the plan" exist. Yet, one of the decisions coming to a contrary conclusion has done so, in part, because of two criticisms it has with interpreting § 1325(b)(1)(A) to require the payment of interest. First, that such an interpretation would require the payment of interest where the best interests of creditors test did not, and second that it would result in unsecured creditors receiving more than priority claims, which need only be paid in full without interest. *Stewart–Harrel,* 443 B.R. at 223–24. Both observations are correct, but they are not sufficient to overcome the language of the statute.

A debtor that does not want to pay interest to unsecured creditors need only devote 100 percent of its disposable income to the plan and then it will be able to provide for the full payment of all allowed unsecured claims in less than the three to five year commitment period otherwise required. 11 U.S.C. § 1325(b)(4)(B). If a debtor would prefer to have a more flexible or less rigorous budget it may choose to devote less than all of its disposable income to the plan; but the price for doing so, and thereby paying unsecured creditors over a longer period of time, is that they must be paid in full with interest. Since interest represents the time value of money and compensation for the risk of default, *see, Till,* 541 U.S. at 474, 124 S.Ct. at 1958, the court sees nothing untoward with such a result. As for *Stewart–Harrel's* second concern—that unsecured creditors would receive interest while priority claims would not—much like barnacles on the bottom of a boat, that disparity seems to be the consequence of the accretions that have grown up on the Bankruptcy Code since 1978, spoiling the clean lines and carefully crafted features it originally had. The resulting distortion suggests that Congress was so focused on solving one problem—the degree of effort that could reasonably be expected of a debtor—that it neglected to smoothly integrate the new provisions of the statute with those that were already there. While the oversight does have the potential to produce some anomalous results, they are not so absurd as to persuade the court that it should effectively ignore the words "as of the effective date of the plan" when it comes to interpreting § 1325(b)(1)(A). *Duncan,* 533 U.S. at 174, 121 S.Ct at 2125 ("We are ... 'reluctan[t] to treat statutory terms as surplusage' in any setting.") (quoting *Babbitt v. Sweet Home Chapter, Communities for Great Ore.,* 515 U.S. 687, 698, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995)).

To be confirmed over the objection of the trustee, a debtor must devote all of its disposable income to the payment of unsecured claims or pay those claims in full with interest. Debtor's plan does neither and so confirmation will be DENIED.

An appropriate order will be entered.

