**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4299
_____

IN RE: STEVEN S. BOCCHINO,
aka Steven Silvio Bocchino
aka Steven Bocchino
aka Steven S Bocchino, III
aka Steven Silvio Bocchino, III
aka Steven Bocchino, III, Debtor

U.S. Securities and Exchange Commission

v.

Steven S. Bocchino,
                    Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3-14-cv-00662)
District Judge: Honorable James M. Munley
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 24, 2015

Before:  CHAGARES, KRAUSE and VAN ANTWERPEN,
*Circuit Judges*.

(Filed: July 23, 2015)

J. Zac Christman, Esq.
Newman, Williams, Mishkin, Corveleyn, Wolfe & Fareri
712 Monroe Street
P.O. Box 511
Stroudsburg, PA 18360
        *Counsel for Appellant*

Tracey Hardin, Esq.
Josephine T. Morse, Esq.
United States Securities & Exchange Commission
100 F Street N.E.
Washington, DC 20549

Patricia H. Schrage, Esq.
United States Securities & Exchange Commission
200 Vesey Street, Suite 400
New York, NY 10281
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____


VAN ANTWERPEN, *Circuit Judge*.

Steven S. Bocchino appeals the final decision of the District Court for the Middle District of Pennsylvania affirming the Bankruptcy Court's order of nondischargeability of civil judgment debts pursuant to 11 U.S.C. § 523(a)(2)(A). *Bocchino v. SEC*, No. 3-14-cv-00662, 2014 WL 4796425 (M.D. Pa. Sept. 26, 2014). For the reasons that follow, we will affirm the decision of the District Court.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Bocchino limits his appeal to two discrete legal rulings and does not challenge the Bankruptcy Court's or the District Court's factfinding.[1] Therefore, the following facts are undisputed.

Bocchino worked as a stockbroker. The nondischargeability order at issue relates to civil judgments against Bocchino for two private placement investments he solicited in 1996 while affiliated with a brokerage firm.[2] The first investment involved an entity known as Traderz Associates Holding, Inc. ("Traderz"). Bocchino learned from a superior that Traderz "might go public" and that the endeavor was supported by "some commitment" from a

---

[1] (*See* Appellant's Br. at 4 ("[T]here were no disputes of facts before the Bankruptcy Court or the District Court, and all issues were decided as a matter of law.")).

[2] A "private placement" is a sale of securities to a relatively small number of select investors as a way of raising capital, as opposed to a "public issue," whereby securities are made available for sale on the open market.

3

popular fashion model. *In re Bocchino*, 504 B.R. 403, 407 (Bankr. M.D. Pa. Dec. 23, 2013). Based solely on these facts, and without any other independent investigation into the quality of the entity, Bocchino immediately sought investment from clients. Bocchino received over $40,000 in commissions from Traderz sales. The second private placement involved Fargo Holdings, Inc. ("Fargo"). The exact source of Bocchino's information regarding Fargo is unclear. Bocchino claimed that he knew about Fargo from an associate at the brokerage firm. Bocchino also claimed that he initially learned of Fargo by meeting a day trader affiliated with the entity. Nevertheless, Bocchino only obtained cursory documentation about the entity before soliciting sales. He did not conduct any independent investigation into the quality of the investment. This lack of investigation occurred despite Bocchino's awareness that Fargo's principal's "full-time 'job' was law student." *In re Bocchino*, 504 B.R. at 408. Bocchino received $14,000 in commissions for his clients' stock purchases in Fargo.[3]

Both Traderz and Fargo turned out to be fraudulent ventures. The principals of each entity were criminally convicted, and the anticipated value of the investments vanished. In the early 2000s, the Securities and Exchange Commission ("SEC") brought two civil law enforcement actions in the U.S. District Court for the Southern District of New York against those who sold investments in the entities. *SEC v. Goldman Lender & Co. Holdings et al.*, 98-CV-7525

---

[3] Bocchino emphasizes that he independently inquired into Fargo's financial health. We find this fact inconsequential, as he did not conduct this investigation until *after* he received payments from clients.

4

(JGK) ("*Goldman Action*") and *SEC v. Nnebe et al.*, 01-CV-5247 (KMW) ("*Nnebe Action*"). The *Goldman Action* alleged that Bocchino had violated Section 17(a) of the Securities Act and Sections 10(b) and 15(a) of the Securities Exchange Act for inducing investors via high pressure sales tactics and material misrepresentations. The court entered a default judgment ordering Bocchino to pay $35,090.00 in disgorgement, $14,779.70 in prejudgment interest, and $35,090.00 in civil penalties. Similarly, the *Nnebe Action* alleged Bocchino violated Sections 5(a), 5(c), and 17(a) of the Securities Act and Sections 10(b), 15(a), and Rule 10b-5 of the Securities Exchange Act. The court entered a default judgment consisting of $14,800.00 in disgorgement, $4,207.85 in prejudgment interest, and $75,000.00 in civil penalties. In total, Bocchino was liable for $178,967.55.

After Bocchino filed for Chapter 13 bankruptcy protection in 2009, the SEC petitioned the Bankruptcy Court for a judgment that the *Goldman Action* and *Nnebe Action* judgments were nondischargeable. The SEC argued that the funds were "obtained by . . . false pretenses, a false representation, or actual fraud" under 11 U.S.C. § 523(a)(2)(A). After post-trial briefing, the Bankruptcy Court ordered the civil penalties discharged under 11 U.S.C. § 1328(a)(2), but retained the remaining $68,877.55 as nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

The Bankruptcy Court recognized that Bocchino believed that his statements to prospective investors were true. Accordingly, it found that "Bocchino did not knowingly make any false statements." *In re Bocchino*, 504 B.R. at 405. However, the Bankruptcy Court continued its inquiry into the application of § 523(a)(2)(A). The Bankruptcy Court relied

upon *In re White*, 128 F. App'x 994, 998–99 (4th Cir. 2005) (per curiam) (unpublished), for the proposition that the scienter requirement of § 523(a)(2)(A) may be satisfied by grossly reckless behavior. The Bankruptcy Court also reasoned that stockbrokers are akin to fiduciaries and the Restatement (Second) of Torts generally supports a finding of fraudulent misrepresentation for a reckless disregard for the truth. The Bankruptcy Court further noted that the Supreme Court found that grossly reckless conduct satisfied the scienter requirement for defalcation under § 523(a)(4) of the Bankruptcy Act. *Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754, 1757 (2013). The Bankruptcy Court described Bocchino's actions as "egregious" and "grossly reckless" in pursuit of his "own greedy purpose, i.e., commissions." *In re Bocchino*, 504 B.R. at 408. "Not only was [Bocchino] negligent, but extremely reckless. As an experienced stockbroker, he knew, or should have known, that an independent investigation into the quality of the product he was selling was imperative." *Id*. Bocchino appealed. He challenged (1) the Court's application of the grossly reckless standard to satisfy the scienter requirement of § 523(a)(2)(A), and (2) the Court's finding that his actions were the proximate cause of his clients' losses.

On appeal, the District Court affirmed the Bankruptcy Court in its entirety. First, the District Court found that holding grossly reckless behavior nondischargeable under § 523(a)(2)(A) accords with the overall policy goal of the Bankruptcy Act—to limit the opportunity of a fresh start to the "honest but unfortunate debtor." *Bocchino*, 2014 WL 4796425, at *2 (quoting *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991)). The District Court also found *Bullock*, related Third Circuit cases, and *In re White* persuasive. In

6

consideration of Bocchino's proximate cause claim, the Court applied general tort law principles to conclude that Bocchino's clients had reasonably relied on his statements as their fiduciary, the investments failed, and the clients suffered losses. The Court reasoned that both the reckless and criminal activities of the principals were substantial factors in the clients' losses, but because the failure of the entities was reasonably foreseeable upon the exercise of due diligence, the crimes were not superseding causes of the losses.

## II.    DISCUSSION[4]

### 1.    Standard of Review

"Because the District Court sat as an appellate court, reviewing an order of the Bankruptcy Court, our review of the District Court's determinations is plenary." *In re Heritage Highgate, Inc.*, 679 F.3d 132, 139 (3d Cir. 2012) (quoting *In re Rashid*, 210 F.3d 201, 205 (3d Cir. 2000)). Therefore, we review the Bankruptcy Court's legal determinations *de novo* and review its factual determinations for clear error. *Id*.

### 2.    Scienter

---

[4] The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. § 1334. The District Court had jurisdiction to review the final order of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). We have jurisdiction to review the final order of the District Court pursuant to 28 U.S.C. § 158(d) and 28 U.S.C. § 1291.

The Bankruptcy Act provides a means for the insolvent to start anew. *Grogan*, 498 U.S. at 286. The Act limits this opportunity to those debtors who are "honest but unfortunate." *Id*. at 286–87. The Act accomplishes this goal by requiring a creditor seeking to prevent a discharge to prove by a preponderance of the evidence that its claim meets one of the statutory exceptions to discharge. *Id*. at 287. The exceptions are strictly construed. *Id*. at 286. Section 523(a)(2)(A) of the Act states:

> A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

11 U.S.C. § 523(a)(2)(A). The SEC argues that Bocchino's gross recklessness satisfies the statute's requisite knowledge and intent to deceive. Bocchino responds that the statute requires proof of actual intent to defraud. [5] Though we

---

[5] Interestingly, Bocchino concedes that recklessness may establish the requisite scienter for § 523(a)(2)(A). (*See* Appellant's Br. at 7). Bocchino also admits that his conduct was reckless. (*Id*.). Nevertheless, Bocchino concludes that the Bankruptcy Court did not find the requisite scienter because it concluded that Bocchino did not knowingly make any false statements. (*Id*.). This argument does not comport with the

implicitly approved of the SEC's position in our consideration of *In re Cohen*, 185 B.R. 171 (Bankr. D.N.J. 1994) ("*Cohen I*"), *aff'd*, 191 B.R. 599, 604 (D.N.J. 1996) ("*Cohen II*"), *aff'd*, *In re Cohen*, 106 F.3d 52 (3d Cir. 1997) ("*Cohen III*"), *aff'd*, 523 U.S. 213 (1998), we did not dedicate any substantial treatment to the issue. Therefore, the scienter requirement of § 523(a)(2)(A) remains, largely, an issue of first impression. We conclude that gross recklessness satisfies the scienter requirement of § 523(a)(2)(A).

First, we look to this Circuit's precedent. In *Cohen III*, we reviewed a district court conclusion that a defendant's misrepresentations about the legal amount of rent that could be charged for an apartment satisfied § 523(a)(2)(A)'s scienter requirement. The petitioner, though well aware of landlord-tenant laws favorable to him, claimed ignorance of rent control provisions in a systematic effort to overcharge renters. *Cohen III*, 106 F.3d at 54. The district court interpreted § 523(a)(2)(A) to require that:

Bankruptcy Court or District Court holdings. The Bankruptcy Court explicitly stated that Bocchino's conduct was "extremely reckless" and, therefore, "the SEC has met its burden of establishing the nondischargeability of sums assessed . . . ." *In re Bocchino*, 504 B.R. at 408. The District Court also identified the incoherence of Bocchino's argument. *Bocchino*, 2014 WL 4796425 at *3 ("Though appellant acknowledges at the outset that 'an intent to deceive may be found upon a finding of recklessness,' he, somewhat confusingly, argues that 'actual wrongful intent to deceive' is also required. Both statements, however, cannot be true . . . ."). Therefore, we interpret Bocchino's argument to be that § 523(a)(2)(A) requires actual intent to defraud.

> (1) the debtor obtained money, property or services through a material misrepresentation; (2) *the debtor, at the time, knew the representation was false or made with gross recklessness as to its truth*; (3) the debtor intended to deceive the creditor; (4) the creditor reasonably relied on the debtor's false representations; and (5) the creditor sustained a loss and damages as a proximate result of the debtor's materially false representations.

*Cohen II*, 191 B.R. at 604 (emphasis added) (quoting *In re Poskanzer*, 143 B.R. 991, 999 (Bankr. D.N.J. 1992) (internal quotation marks omitted). On appeal, we approved of this formulation:

> We have carefully considered both the facts and the law and we find no error in the district court's conclusion that Cohen committed fraud within the meaning of 11 U.S.C. § 523(a)(2)(A) . . . . [T]he district court applied the correct principles of law . . . . [W]e affirm without discussion the district court's order affirming the bankruptcy judge's findings of fraud under [] the bankruptcy code.

*Cohen III*, 106 F.3d at 55.

Section 523(a)(2)(A) does not explicitly state what level of reliance, materiality, or intentionality is required. *Field v. Mans*, 516 U.S. 59, 68 (1995). The language of the

10

Section, however, has only changed slightly through the Bankruptcy Act's amendments. *Id*. at 65. The Supreme Court has stated that this relatively slow evolution instructs us that the terms "are common-law terms, and . . . they imply elements that the common law has defined them to include." *Id*. at 68–70. The fact that Congress did not enumerate specific elements does not negate its intent to import their common law significance. *Id*. Therefore, we look to the Restatement (Second) of Torts for guidance. *Id*.; *see also, e.g.*, *In re Biondo*, 180 F.3d 126, 134 (4th Cir. 1999) (citing Restatement (Second) of Torts § 525). As the Restatement describes the scienter requirement:

> A misrepresentation is fraudulent if the maker (a) knows or believes that the matter is not as he represents it to be, (b) does not have the confidence in the accuracy of his representation that he states or implies, or (c) knows that he does not have the basis for his representation that he states or implies.

Restatement (Second) of Torts § 526. Absent statutory restrictions, we have maintained that acting with a reckless disregard for the truth establishes scienter for securities fraud. *McLean v. Alexander*, 599 F.2d 1190, 1197 (3d Cir. 1979) (superseded by statute); *see also Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 267 (3d Cir. 2009) (noting heightened pleading standard of the Private Securities Litigation Reform Act may still be met with sufficient circumstantial evidence of reckless behavior). Allowing gross recklessness to satisfy the scienter requirement would also accord with other circuits who have considered the issue. *See In re Rembert*, 141 F.3d 277, 280 (6th Cir. 1998) (requiring

11

proof that "the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth"); *Mayer v. Spanel Int'l, Ltd*., 51 F.3d 670, 673–75 (7th Cir. 1995) ("[A] creditor must prove that the debtor obtained the money through representations which the debtor either knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentation."); *In re White*, 128 F. App'x at 998–99 (4th Cir. 2005) ("A showing of reckless indifference to the truth is sufficient to demonstrate the requisite intent to deceive.").[6]

We also draw support from the Supreme Court's treatment of a related Bankruptcy Act provision. In *Bullock v. BankChampaign, N.A*., the Court interpreted § 523(a)(4) so as to include a prohibition on discharge for defalcation committed by gross recklessness. 133 S.Ct. 1754, 1759 (2013). Section 523(a)(4) prohibits discharge for debts obtained through "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). On account of the term's kinship with other statutory terms, including fraud, the Court reasoned that the culpable state of mind requirement was one "involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock*, 133 S.Ct. at 1757. In so holding, *Bullock* also found support

---

[6] District courts within this Circuit have also adopted this position. *See In re Purington*, No. 12-4135, 2013 WL 3442893, at *2–3 (D.N.J. July 9, 2013); *In re Pandolfelli*, Nos. 11-5179, 11-5231, 11-7031, 2012 WL 503668, at *7 (D.N.J. Feb. 15, 2012); *In re Reynolds*, 193 B.R. 195, 200 (D.N.J. Feb. 5, 1996).

for the scienter requirements from the model penal code that imposes liability for willful blindness. *Id*. at 1759–60. Bocchino has not presented a compelling argument why the Supreme Court's reasoning for § 523(a)(4) should not apply with similar force to § 523(a)(2)(A).

We have also applied similar reasoning in other areas of the Bankruptcy Code. In *In re Cohn*, 54 F.3d 1108 (3d Cir. 1995), we examined a similar question with respect to § 523(a)(2)(B). That Section renders money obtained by materially false written statements nondischargeable. 11 U.S.C. § 523(a)(2)(B). Though the statute contains an express "intent to deceive" requirement unlike § 523(a)(2)(A), we allowed a claimant to prove intent to deceive by showing, by a totality of the circumstances, reckless indifference or reckless disregard of the accuracy of information. *In re Cohn*, 54 F.3d at 1119. Similarly, in *In re Docteroff*, we noted that "[b]ankruptcy courts have overwhelmingly held that a debtor's silence regarding material fact can constitute a false representation actionable under [S]ection 523(a)(2)(A)." 133 F.3d 210, 216 (3d Cir. 1997) (quoting *In re Van Horne*, 823 F.2d 1285, 1288 (8th Cir. 1987) (collecting cases)). We echo *Bullock* by noting that uniformity in the federal law is important, and we have not been presented with a strong argument why the statute should be read differently than the related provisions of the Act. To read § 523(a)(2)(A) so restrictively as to sanction Bocchino's gross recklessness would be at odds with the general principles of the Act. *Bullock*, 133 S.Ct. at 1761. A debtor will rarely admit to intentional deception, thus intent is most often inferred from the totality of the circumstances. *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997).

Therefore, we affirm the District Court's holding that § 523(a)(2)(A)'s scienter requirement was satisfied by Bocchino's gross recklessness.

### 3.    *Proximate Cause*

We have little trouble finding that Bocchino's gross negligence was also the proximate cause of his clients' losses. Proximate cause is a term of art, demanding sufficient connection between the injury and the conduct alleged. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992). "At bottom, the notion of proximate cause reflects 'ideas of what justice demands, or of what is administratively possible and convenient.'" *Id*. (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 41, p. 264 (5th ed. 1984)). Proximate cause includes both cause-in-fact and legal causation. *Fedorczyk v. Caribbean Cruise Lines, Ltd*., 82 F.3d 69, 73 (3d Cir. 1996). Bocchino does not challenge that his actions were the cause-in-fact of his clients' injuries. Legal cause is established where the loss was reasonably expected to result from reliance upon the misrepresentation. Restatement (Second) of Torts § 548A. There is no serious question on the facts that Bocchino failed to investigate the private placements before soliciting sales or that Bocchino's clients would not have purchased the fraudulent stock absent Bocchino's grossly reckless misrepresentations. A reasonable review of the fundamentals of the ventures would have revealed that the placements were worthless. Therefore, proximate cause has been established.

Furthermore, we agree with the District Court that the actions of the principals of Traderz and Fargo were not a

14

superseding cause. *Bocchino*, 2014 WL 4796425, at \*8 (citing *Staub v. Proctor Hosp.*, 131 S.Ct. 1186, 1192 (2011)). A superseding cause is "a later cause of independent origin that was not foreseeable." *Exxon Co., U.S.A., v. Sofec, Inc.*, 517 U.S. 830, 837 (1996); *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 771–72 (3d Cir. 2009) (quoting Restatement (Second) of Torts § 443). Where an actor's conduct is a substantial factor in bringing about harm, an intervening force created by the actor's negligent conduct will not suffice to break legal cause. Restatement (Second) of Torts § 443. We find that the collapse of the private placements was neither abnormal nor extraordinary given Bocchino's lack of due diligence. Given the woeful state of the entities when Bocchino solicited the investments, we find that the losses were manifestly foreseeable. Moreover, not only has Bocchino failed to challenge any of the factfinding below, we note that nothing in the record indicates that the District Court committed clear error in concluding that the investments were destined for failure.

## III. CONCLUSION

For the foregoing reasons, we affirm the District Court's order affirming the Bankruptcy Court's order of nondischargeability.