J-A02038-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GERALD D. HOAK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RUSSELL W. NEWTON, MERIT | : | No. 315 MDA 2018 |
| SECURITIES, INC., MERIT CAPITAL | : | |
| ASSOCIATES, INC., MERIT CAPITAL | : | |
| MANAGEMENT, SOURCE CAPITAL | : | |
| GROUP, INC., SOURCE SECURITIES, | : | |
| INC., SOURCE CAPITAL | : | |
| MANAGEMENT | : | |

Appeal from the Judgment Entered January 15, 2018
In the Court of Common Pleas of Schuylkill County Civil Division at
No(s):  S-1827-06

BEFORE: LAZARUS, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:          **FILED: JULY 23, 2019**

Appellant Gerald D. Hoak appeals from the judgment entered in favor

of Appellees Russell W. Newton, Merit Securities, Inc.,[1] Merit Capital

Associates, Inc., Merit Capital Management, Source Capital Group, Inc.,

Source Securities, Inc., and Source Capital Management following trial.[2]

_____

[1] Merit Securities, Inc. is not a party to this appeal because Appellant withdrew his claims against it.  R.R. at 1085a.  We cite to the reproduced record for the parties' convenience.  No party has objected to the accuracy of any document in the reproduced record.

[2] We collectively refer to Source Capital Group, Inc., Source Securities, Inc., and Source Capital Management as Source.

J-A02038-19

Appellant contends the trial court erred by refusing to remove the compulsory nonsuit on his Pennsylvania Unfair Trade Practices and Consumer Protection Law[3] (UTPCPL) claim. Appellant also contends that the court erred in numerous evidentiary rulings relevant to his claim. We affirm.

This is the third time that Appellant has appealed to this Court. We state the background as set forth in *Hoak v. Newton*, 697 MDA 2009 (Pa. Super. Sept. 8, 2010) (*Hoak I*) (unpublished mem.):

> In 1983, Hoak was involved in a car accident that left him paralyzed from the chest down. Hoak received a settlement of $2.5 million. Hoak hired Russell Newton ("Newton"), an executive at an investment advisory firm, Merit Capital Associates, as his financial advisor. Merit Capital sold its assets to Source Capital Group in 2001.[4] Hoak had entered into an investment agreement with Merit Capital in 1992 and then with Source Capital in 2002.[5]
>
> At some point, Newton introduced Hoak to Christopher Paul Thalacker ("Thalacker"). In 1996, Hoak gave Thalacker about $200,000 to invest, which ultimately increased to about $420,000 by 1998. At that time, Hoak agreed to invest this money in a limited partnership hedge fund, Alta Focus Fund,[6] which was managed by Thalacker. Hoak was a limited partner with Alta Focus Fund. The Alta Focus Fund Limited Partnership Agreement ("the Agreement") governed the legal relationship between Thalacker and Hoak and required parties to submit any dispute to arbitration before the AAA. Newton was not involved in Alta Focus Fund. The Alta Focus Fund closed in 2001.

_____

[3] 73 P.S. §§ 201-1 to 201-9.3.

[4] Newton joined Source Capital Group.

[5] Appellant identified his occupation as "investor." R.R. at 786a, 788a.

[6] Appellant also refers to the Alta Focus Fund as the Thalacker Fund.

- 2 -

In 200[6], Hoak filed suit against the above-named parties, including Thalacker and the Newton Defendants.[fn3] All of the named defendants had a connection with money Hoak invested in the various accounts. In his suit, Hoak claimed that he lost approximately $570,000 in the Alta Focus Fund. Hoak also claimed that the Newton Defendants mismanaged other investments unrelated to the Alta Focus Fund.

[fn3] The "Newton Defendants" include Newton, Merit Securities, Inc., Merit Capital Associates, Inc., Merit Capital Management, [Source], and former officers and directors of these entities, including Robert Fitzpatrick, David W. Harris, and Bruce C. Ryan.[7]

**Hoak I**, at 2-3 (some footnotes omitted).

Appellant raised thirty-three claims in his 2006 lawsuit, of which we quote his UTPCPL count, his twenty-second claim, as follows:

463. [Appellant] procured from [Appellees], goods and services protected under 73 P.S. § 201-1 to 73 P.S. § 201-9.2 in the form of financial services, tax advice, brokerage services, and investment advisory services for household and personal use. A true and correct copy of cited sections of the UTPCPL are attached as Exhibit "X" and, incorporated by this reference as though the same were set forth herein verbatim.

464. [Appellant] is thereby entitled to protection and relief under the UTPCPL for damages to his personal property. See attached Exhibit "X."

465. . . . Source . . . defendants made materially false or misleading statements and promises, or omitted to state material facts necessary to make their statements to [Appellant] not misleading.

466. [Appellant] justifiably relied on the false representations made by . . . Source . . . defendants.

---

[7] Hoak later settled with Fitzpatrick, Harris, and Ryan. R.R. at 550a.

467. Under the UTPCPL, treble damages are applicable as exemplary damages. See attached Exhibit "X."

468. [Appellees'] actions were continuous, repeated, and ongoing, and thereby constitute intentional, outrageous, and malicious conduct for which [Appellant] is entitled to exemplary damages.

WHEREFORE, [Appellant] respectfully demands unliquidated damages in excess of $1,800,000.00 under UTPCPL §§ 201-1 through 201-9.2, treble damages, attorney fees and costs for prosecuting this action, rescission, and any further just and equitable relief as the court deems appropriate.

R.R. at 98a-99a.[8]

In February 2008, Thalacker filed a Petition to compel arbitration pursuant to the Agreement. Hoak opposed the Petition arguing that the Newton Defendants were intertwined with the Thalacker matter and therefore should be made part of the arbitration.[9] Hoak further argued that the case should not proceed to arbitration because he had already spent time and money on the litigation. On May 1, 2008, the trial court rejected Hoak's arguments, finding that no discovery had been conducted, and granted the Petition to compel AAA arbitration. Hoak filed reconsideration Motions seeking a hearing closer to his home than New York City due to his health problems. The trial court denied these Motions. On June 17, 2008, this Court, in a *per curiam* order, denied review of the case because it was an interlocutory appeal.

Hoak thereafter filed an arbitration claim with the Financial Industry Regulatory Authority ("FINRA")[10] since it could

---

[8] Appellant's complaint spanned 628 paragraphs over 100 pages.

[9] Appellant again challenged the exclusion of the Newton Defendants from the arbitration in **Hoak v. Newton**, 1931 MDA 2011 (Pa. Super. Oct. 5, 2012) (unpublished mem.) (**Hoak II**), which is discussed below.

[10] "FINRA is responsible for regulatory oversight of all securities firms that do business with the public, and has the power to initiate a disciplinary proceeding against any FINRA member for violating any FINRA rule."

guarantee that the arbitration hearing would be conducted near Hoak's home and not in New York City. On October 27, 2008, Thalacker filed a Motion for contempt and a Motion to stay the FINRA proceedings, arguing that the Agreement required AAA arbitration. The trial court granted Thalacker's Motion to stay on November 14, 2008.

On December 5, 2008, Thalacker filed an arbitration claim with AAA. In response, Hoak filed a Motion to compel the Newton Defendants into the Thalacker arbitration. Hoak claimed that Thalacker was employed by the Newton Defendants at the time Thalacker was operating the Alta Focus Fund. Hoak also filed two Motions to stay the AAA arbitration pending resolution of the Motion for contempt and the resolution of the Motion to compel the Newton Defendants into the AAA arbitration. The trial court granted the Motion for contempt. Thereafter, the trial court issued three Orders, the subject of this appeal, which denied the stay Motions and denied the Motion to compel the Newton Defendants into the Thalacker arbitration. The trial court determined that the Newton Defendants were not parties to the Agreement and could not be bound by its terms.

*Hoak I*, at 3-4 (some footnotes omitted).

Appellant timely appealed from the three orders above, but while that appeal was pending, the following events occurred:

In the interim, the matter proceeded to arbitration and was scheduled for a hearing on July 20, 2009, at the AAA offices in Philadelphia. Neither Hoak nor his attorney sought alternative arrangements, including requesting a different location or different conditions, for the hearing. At the arbitration hearing, neither Hoak nor his counsel appeared. However, the record was kept open for three weeks to allow Hoak the opportunity to present evidence to support his claims. Hoak did not present any evidence. On September 14, 2009, the arbitrator granted Thalacker a declaratory judgment on each cause of action against him and awarded him $31,615 in fees and expenses. On October

---

*NASDAQ OMX PHLX, Inc. v. PennMont Secs.*, 52 A.3d 296, 310 (Pa. Super. 2012) (quotation marks and citation omitted).

13, 2009, Hoak filed a Motion to vacate the arbitration award in the trial court. On November 2, 2009, Thalacker filed a response to Hoak's Motion and filed a Motion to confirm the arbitration award. These matters were pending before the trial court at the time the appellate briefs in this case were filed.

*Id.* at 5. The *Hoak I* Court dismissed the appeal as moot because it could grant no relief given the arbitration had concluded. *Id.* at 7-8.

Meanwhile, the trial court denied Appellant's motion to vacate the arbitration award and granted Thalacker's motion to confirm the arbitration award. "The trial court also granted the 'request for dismissal of the causes of action against . . . Thalacker in the First Amended Complaint' and dismissed Hoak's action with prejudice. Order, 10/3/11." *Id.* at 5 n.1. Appellant appealed, challenging various aspects of the arbitration award. *See id.* at 5-6. Two such issues involved "the trial court's denial of his second motion for special relief, which entailed the compelling of the Newton Defendants to arbitrate in the Thalacker arbitration." *See id.* at 13. Appellant also argued that the "Pennsylvania Securities Act and FINRA prohibit[ed] independent contractor status." *Id.* at 14. The *Hoak II* Court affirmed, and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. *Hoak v. Newton*, 382 MAL 2013 (Pa. Nov. 15, 2013).

Subsequently, the case proceeded to a trial, at which the trial court determined the UTPCPL claim and a jury addressed the remaining claims against Appellees. As stated above, Appellant's UTPCPL claim alleged material false or misleading statements or omissions regarding various investments.

One such example was a $475,000 investment in Stansbury Holdings Company, which controlled a vermiculite and garnet mine in Montana.

After Appellant rested his case-in-chief, Appellees moved for nonsuit. Over Appellant's objection, the trial court granted Appellees' motion in part by dismissing, among other things, Appellant's UTPCPL claim:

> [T]he UTPCPL claim is dismissed. . . .  This is more than just a simple consumer transaction.  This is a long-term investment relationship that existed from 1991 right up until practically 2006 when suit was filed.  So . . . that's being dismissed.  That's not within the ambit of the act as I read it and the cases I've read.  So that's granted.  That's out.

R.R. at 1070a.

Appellees then presented their case, at the conclusion of which they moved for a directed verdict on all claims.  *Id.* at 1353a.  The trial court granted Appellees' motion in part and dismissed Appellant's fraud and negligence claims, leaving a breach of contract claim for the jury to resolve. *Id.* at 1396a, 1403a-05a.  On November 30, 2017, the jury found in favor of Appellees on the breach of contract claim.  *Id.* at 1549a.

On Monday, December 11, 2017, Appellant timely filed a post-trial motion requesting the removal of the nonsuit or a new trial, which the trial court denied on December 18, 2017.  *Id.* at 530a.  The court entered judgment on January 15, 2018,[11] and Appellant timely appealed on February

---

[11] The judgment, although dated January 12, 2018, was docketed on January 15, 2018.

12, 2018. Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) statement. *Id.* at 541a-46a.

Appellant raises the following issues:

1. . . . Did the trial court err as a matter of law and abuse its discretion by declaring "there was no compelling evidence even by a preponderance of the evidence standard to lead the court to conclude that the [Appellees] had violated the UTPCPL"[?]

2. . . . Did the trial court err as a matter of law and abuse its discretion by dismissing Appellant's claims against [Appellees] for losses suffered by [Appellant] in the Thalacker Fund?

Appellant's Brief at 5 (some capitalization omitted).

Briefly, in support of his first issue, Appellant claims that the trial court erred by entering compulsory nonsuit on his UTPCPL claim. *Id.* at 12. In support, Appellant asserts that the court misapplied the appropriate standard of review for entering nonsuit when it stated that it found no "compelling" evidence to sustain Appellant's UTPCPL claim. *Id.* at 13. Appellant also contends that trial court's evidentiary rulings relevant to his UTPCPL claim were improper, evinced the trial court's bias, and should have precluded the entry of compulsory nonsuit. *Id.* at 13-14.

For his second issue, Appellant claims that the trial court erred in granting Appellees' motion *in limine* to preclude Appellant from presenting any evidence related to Thalacker. *Id.* at 14-15. Appellant asserts that this ruling prohibited him from establishing his "claims against [Appellees] as *respondeat superior* in any trial of [his] claims against [Appellees] for Thalacker['s] frauds and failures." *Id.* at 15-16 (some capitalization omitted).

**1. Appellant's Issue Regarding Nonsuit on his UTPCPL Claim**

**a. Nonsuit Generally**

As to Appellant's initial issue regarding nonsuit, Appellant refers this Court to a single sentence in the trial court's Rule 1925(a) decision justifying nonsuit: "However, there was no compelling evidence even by a preponderance of the evidence standard to lead the Court to conclude that Newton Defendants had violated the UTPCPL." *Id.* at 20 (quoting Trial Ct. Op., 4/16/18, at 8). In support, Appellant cites *Boehm v. Riversource Life Ins. Co.*, 117 A.3d 308, 323 (Pa. Super. 2015), which reiterates the preponderance-of-the-evidence burden of proof.

Generally, we review an order granting nonsuit as follows:

A trial court may enter a compulsory nonsuit on any and all causes of action if, at the close of the plaintiff's case against all defendants on liability, the court finds that the plaintiff has failed to establish a right to relief. Absent such finding, the trial court shall deny the application for a nonsuit. On appeal, entry of a compulsory nonsuit is affirmed only if no liability exists based on the relevant facts and circumstances, with appellant receiving the benefit of every reasonable inference and resolving all evidentiary conflicts in [appellant's] favor. The compulsory nonsuit is otherwise properly removed and the matter remanded for a new trial. The appellate court must review the evidence to determine whether the trial court abused its discretion or made an error of law.

*Baird v. Smiley*, 169 A.3d 120, 124 (Pa. Super. 2017) (citations and quotation marks omitted).

Instantly, as noted above, the trial court entered nonsuit based on its determination that Appellant's investment in the Stansbury mine was "more

than just a simple consumer transaction" and that "a long-term investment relationship that existed from 1991 right up until practically 2006 when suit was filed." R.R. at 1070a. Indeed, the trial court concluded that the evidence established Appellant was a knowing and intelligent investor who assumed the risk of loss. Trial Ct. Op. at 8-9. Appellant's appellate argument, however, does not directly challenge either conclusion.

Instead, Appellant claims that the court, in light of its evidentiary rulings, misapplied the proper preponderance-of-the-evidence standard for entering nonsuit. We do not, however, conclude the trial court erred based on a single sentence in its Rule 1925(a) opinion. Appellant's citation to a single legal authority, **Boehm**, merely repeats the applicable burden of proof and alone is not persuasive. Absent citation to and discussion of relevant legal authorities, **see** Pa.R.A.P. 2119, Appellant does not establish trial court error based on the court's perhaps inartful use of the adjective "compelling" to describe "evidence" actually presented by Appellant during his case-in-chief.[12]

---

[12] Appellant's reply brief expanded upon his original argument. **See** Appellant's Reply Brief at 4-22. We are constrained, however, to disregard the new theories presented in his reply brief.

> The Pennsylvania Rules of Appellate Procedure make clear that an "appellant may file a brief in reply to matters raised by appellee's brief not previously raised in appellant's brief." Pa.R.A.P. 2113(a). Thus, an appellant is prohibited from raising new issues in a reply brief. Moreover, a reply brief cannot be a vehicle to argue issues raised but inadequately developed in appellant's original brief. When an appellant uses a reply brief to raise new issues or remedy

- 10 -

### b. Appellant's Evidentiary Issues Regarding His UTPCPL Claim

Next, Appellant challenges the trial court's evidentiary rulings. Appellant contends the trial court created unfair trial proceeding and was "all too eager to help the highly educated, investment advisor [Appellant] testify" to the jury. Appellant's Brief at 19. Appellant argues "it is no wonder that the court found . . . Newton 'credible'" and that the court, as a result, applied the wrong standard of proof when entering nonsuit. *Id.* at 19-20.

As Appellant is appealing from the denial of his motion for a new trial, the standard of review for these issues is as follows:

> [I]t is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial.
>
> Thus, when analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial court abused its discretion.
>
> Moreover, our review must be tailored to a well-settled, two-part analysis:
>
> We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then determine

---

> deficient discussions in an initial brief, the appellate court may suppress the non-complying portions.

*Commonwealth v. Fahy*, 737 A.2d 214, 218 n.8 (Pa. 1999) (some citations omitted).

whether the trial court abused its discretion in ruling on the request for a new trial.

***Gurley v. Janssen Pharm., Inc.***, 113 A.3d 283, 288-89 (Pa. Super. 2015) (citation, formatting, and ellipses omitted).  Because the alleged mistake involved an evidentiary issue, we note that "the admissibility of evidence is within the sound discretion of the trial court, and we will not disturb an evidentiary ruling absent an abuse of that discretion."  ***Commonwealth v. Arrington***, 86 A.3d 831, 842 (Pa. 2014) (citation omitted).

## (1) Admission of Liability

Appellant contends that the trial court erred in redacting portions of an email, which Appellant characterized as an admission of liability.  Appellant's Brief at 24.  Before summarizing Appellant's argument, we state the following as background.  Appellant claimed that between the years 2000 and 2001, Newton and others misrepresented the financial status of Stansbury as a viable garnet and vermiculite mine.  As a result of their misrepresentations, Appellant argued that Newton manipulated him into executing five private placements[13] with Stansbury, totaling $475,000.  R.R. at 710a-11a.  Appellant asserts that Stansbury was not a viable mine, which resulted in Appellant losing his entire investment by 2006.

---

[13] "A 'private placement' is a sale of securities to a relatively small number of select investors as a way of raising capital, as opposed to a 'public issue,' whereby securities are made available for sale on the open market." ***In re Bocchino***, 794 F.3d 376, 378 n.2 (3d Cir. 2015).

- 12 -

In August 2006, Newton wrote the below email to Appellant:

[Appellant],

I'm really sorry you feel that way because I did do my best to try to help you. As I've told you many times, I do feel a responsibility to you for Stansbury, and I'd like to try to have a conversation with you to figure out how to handle it. As you know, I lost a lot of money in that deal too, and I continue to work at recovering what ever [sic] I can for your benefit, not mine. That situation is a mess, there's no doubt. I've even spent many hours testifying before the SEC because they are going after management and the auditors of the company for inflating their assets artificially. Believe me, if I'd known there was anything funny with the company, neither you or I would be in this position. Your lawyer seems like a reasonable guy, but all lawyers take a big piece of the pie for negotiating a deal that you and I should be able to do without him. You know in your heart what went wrong, just like I do. I'd like to sit down with you, show you all the facts and figures, and work out a way to do what is right for you and me. I'm sure Rich told you that those are my honest feelings, and I've expressed that same feeling of responsibility to you before. I have always intended to find a way to make it up to you. But we need to find a way that doesn't jeopardize my ability to hold up my end of that bargain. Quickly filing a suit would put me out of business, and wouldn't help you either. I truly hope you can find a way for us to communicate directly about this. It will result in the best outcome for both of us. [Appellant], your trust in me is not wasted, give me a chance to show you that. Please give me a call. I'll drive down to see you next week if you'd prefer that.

Thanks,
[Newton]

R.R. at 198a.

- 13 -

J-A02038-19

At trial, Appellant sought to introduce the above email, but Appellees objected on the basis that the email was precluded by Pa.R.E. 408[14] as a settlement offer. *Id.* at 946a. The trial court initially sustained Appellees' objection, but permitted Appellant's counsel to preserve his argument for the record. *Id.* Appellant first noted that the court could "redact as much as [it] want[s]," but that the email should be admitted to establish Appellant was on notice of Newton's alleged fraud in August 2006 and as an admission of Newton's liability under Pa.R.E. 803(25). *Id.* at 946a-48a. The court essentially stated it would reconsider its ruling and issue a new ruling after a lunch recess. *Id.* at 948a.

Subsequently, the trial court reasoned as follows:

We've taken your arguments into consideration using our best judgment. . . . I've redacted this to reflect that the area that's not redacted would be allowed . . . with regards to the e-mail.

_____

[14] Pennsylvania Rule of Evidence 408(a) states:

**(a) Prohibited Uses.** Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

(1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or a statement made during compromise negotiations about the claim.

Pa.R.E. 408(a).

- 14 -

Apparently it's an e-mail from [Newton to Appellant]. It says, "I'm really sorry you feel that way because I did my best to try to help you. As I've told you many times, I do feel a responsibility to you for Stansbury. And I'd like to try to have a conversation with you to figure out how to handle it. As you know, I lost a lot of money in that deal, too, and I continue to work at recovering whatever I can for your benefit, not mine. That situation is a mess, there is no doubt."

And then everything else is redacted except for down below. It says, "I've always intended to find a way to make it up to you."

Now, we're admitting that as, for two reasons, an admission against—or we're going to allow [Appellant] to question [Newton] with regard to that . . . for two reasons. It is an admission against interest. It appears to be. And secondly, it also goes to the statute of limitations argument that has been advanced. And it's part of this case right now.

So for those reasons, we're going to allow it. We'll grant you an exception [Appellees] and grant you an exception, too, [Appellant].

*Id.* at 953a-54a.

Appellees renewed their objection that the email was precluded under Pa.R.E. 408. Appellees also raised an objection that the redacted email still included the phrase, "I have always intended to find a way to make it up to you," which they construed as an offer of compromise. *Id.* at 955a. Appellant did not raise or renew any objection about the extent of the redaction.

The trial court therefore admitted the following redacted version of the email:

I'm really sorry you feel that way because I did do my best to try to help you. As I've told you many times, I do feel a responsibility to you for Stansbury, and I'd like to try to have a conversation with you to figure out how to handle it. As you know, I lost a lot of money in that deal too, and I continue to work at recovering

- 15 -

what ever [sic] I can for your benefit, not mine. That situation is a mess, there's no doubt. . . . I have always intended to find a way to make it up to you.

***Id.*** at 1785a (redacted email admitted at trial).

On appeal, Appellant contends that the trial court erred by excluding the redacted portions under Pa.R.E. 408 or 803(25). Appellant's Brief at 26. In Appellant's view, the redacted statements were outside the scope of Rule 408. Appellant, however, did not argue that the error resulted in sufficient prejudice as to justify a new trial. ***See Gurley***, 113 A.3d at 288-89.

Here, even if the unredacted email was admissible under Rule 408 or 803(25), Appellant has not articulated how he was prejudiced. ***See*** Appellant's Brief at 24-26. Accordingly, Appellant has waived his claim because we cannot address whether the error resulted in prejudice that would justify reversing a motion for a new trial.[15] ***See Gurley***, 113 A.3d at 288-89.

### (2) Leading Testimony

Appellant next argues the trial court erred by permitting Newton's counsel to lead Newton's testimony and Newton to read his testimony. Appellant's Brief at 28. Appellant's brief quotes thirteen pages of testimony in support.[16] ***Id.*** at 28-40. Appellant summarily claims the trial court's

---

[15] We add that although the court noted Appellant had an unspecified exception, Appellant did not specifically object to the court redacting the document. ***See*** R.R. at 946a, 954a; Pa.R.A.P. 302(a).

[16] The disputed testimony occurs after Appellant had rested and the court granted Appellees' motion to dismiss Appellant's UTPCPL claim. R.R. at 1070a.

acquiescence to leading questions conveyed the impression to the jury that the court was biased. Appellant's Brief at 40-41.

We review a trial court's decision to permit leading questions for an abuse of discretion. ***Katz v. St. Mary Hosp.***, 816 A.2d 1125, 1128 (Pa. Super. 2003) ("The allowance of leading questions lies within the discretion of the trial court and a court's tolerance or intolerance of leading questions will not be reversed absent an abuse of discretion." (citation omitted)); ***see generally*** Pa.R.E. 611(c).

On appeal, Appellant has limited his appellate arguments to the trial court's decision to grant nonsuit on his UTPCPL claim. ***See*** Appellant's Brief at 16. Therefore, the disputed leading testimony, which occurred following the nonsuit, even if erroneous, could not have affected the court's decision to grant nonsuit. ***See Garner v. Pa. Human Relations Comm'n***, 16 A.3d 1189, 1204 n.13 (Pa. Super. 2011) (holding error that does not alter outcome of motion for nonsuit is harmless error).

### (3) FINRA and SEC Documents

Appellant contends that the trial court erred in refusing to admit FINRA and SEC documents regarding Newton. By way of background, on September 8, 2017, Appellant filed a motion *in limine* to have the court admit Newton's

"FINRA Broker Dealer Report" and "SEC Investment Adviser Representative Public Disclosure Report" under Pa.R.E. 404(b)(2).[17]  R.R. at 366a.

The FINRA Broker Dealer Report is a thirty-three page document detailing Newton's employment history and disciplinary actions against him, including his disbarment.  *Id.* at 375a.  Newton's FINRA report discloses five regulatory actions, three settled customer disputes, and one ongoing customer dispute (the instant litigation).  *Id.* at 374a-401a.  The report includes summaries of the allegations that led to the actions or disputes.  *Id.* For example, the report entry for July 28, 2017, follows:

> Without admitting or denying the findings, Newton consented to the sanction and to the entry of findings that he refused to provide on-the-record testimony in connection with an investigation into potential securities law violations during the time Newton was associated with his member firm.

*Id.* at 383a.  Another entry, dated July 14, 2014, addressed improper supervision of subordinates regarding private placements in the oil and gas industry.  *Id.* at 386a, 389a.  The remaining three entries for regulatory actions, dating between 1999 and 2001, detail the sale of unregistered securities by unlicensed subordinates and improper commission payments. *Id.* at 394a-95a.  The three settled customer disputes regarded failure to

---

[17] Pa.R.E. 404(b)(2) provides that "[e]vidence of a crime, wrong, or other act" "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Pa.R.E. 404(b)(1)-(2).

supervise private placements in the oil and gas industry between 2000 and 2008. *Id.* at 398a-99a.

Newton's SEC Investment Adviser Representative Public Disclosure Report similarly lists his employment history and qualifications. *Id.* at 407a-13a. The SEC report does not disclose any disciplinary actions.

In his motion *in limine* in support of the admission of the FINRA and SEC reports, Appellant claimed:

> Virtually every investment except for one investment that Newton sold [Appellant] was a fraud or failure costing [Appellant] over $900,000. In all of these investments Newton profited handsomely while [Appellant's] savings were plundered. Through these investments Newton broke laws, rules and regulations for which he is now, and finally after decades of violations, barred from the securities industry and also barred as an investment adviser. Newton is barred because he refuses to provide on-the-record testimony in connection with an investigation into securities law violations during the time Newton was associated with Source.

*Id.* at 369a-70a. In Appellant's view, "Newton['s] conduct over the decades ending with his permanent barring is exactly the type of evidence [Rule] 404(b)(2) identifies as relevant, namely Newton's 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *Id.* at 373a (quoting Pa.R.E. 404(b)(2)).

On October 23, 2017, the trial court denied Appellant's motion as follows:

> The FINRA Record submitted by [Appellant] reflects that the Defendant, Newton[,] had regulatory action taken in 1999 and 2016 but the same are not relevant to the facts as presented by [Appellant] in this litigation. [Appellant] also presented the FINRA

Record confirming that the Defendant, Newton, voluntarily consented to the surrender of his FINRA license on July 26, 2017 with the provision that "nothing in this provision affects my: (i) testimonial obligation; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which FINRA is not a party." As such, the FINRA Record specifically leads to the conclusion that Defendant surrendered his license via consent without Newton admitting or denying any findings and it does not constitute a final Order based on violations of any laws or regulations that prohibit fraudulent, manipulative or deceptive conduct.

*Id.* at 462a-63a; ***accord id.*** at 2197a.

On appeal, Appellant believes the trial court erred by denying his motion *in limine* to admit Pa.R.E. 404(b)(2) evidence. Appellant's Brief at 22. The court, Appellant argues, should have admitted such evidence to counter testimony about Newton's good character and undermine Newton's credibility. *Id.* at 22-23. In Appellant's view, if he was permitted to impeach Newton with the Rule 404(b)(2) evidence, then he would have had a fair trial. *Id.* at 23.

It is well settled that

Pennsylvania Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Pa.R.E. 404(b)(1). Such evidence may be admitted, however, if offered for a valid purpose such as proving the existence of a common scheme, establishing an individual's motive, intent, or plan, or [identity, among other things]. Pa.R.E. 404(b)(2).

***Arrington***, 86 A.3d at 842 (citation omitted).[18] If the appellant establishes the trial court erred by refusing to admit evidence under Rule 404(b)(2), the appellant must then establish the error was sufficiently prejudicial as to warrant a new trial. ***See id.***; ***Gurley***, 113 A.3d at 288-89.

In ***Homewood People's Bank v. Marshall***, 72 A. 627 (Pa. 1909), the plaintiff claimed the defendant transferred property to his brothers to defraud his creditors. ***Marshall***, 72 A. at 629. Following a jury verdict in favor of the

_____

[18] In ***Jamestown Iron & Metal Co. v. Knofsky***, 154 A. 15 (Pa. 1930), the Pennsylvania Supreme Court explained that

> the falsity of one [act] cannot be proved by a comparison with the other [act], nor could a presumption of falsity be thus raised. A distinct act or crime, alleged to have been committed by the accused at a given time, cannot be proved by showing the performance by him of another similar act at a different time. There are many reasons why such proofs are rejected by the courts . . . and it is not necessary to restate them.
>
> But, once the substantive fact of falsity is established, evidence of prior or subsequent acts of the same nature is admissible to show knowledge of falsity and intention that plaintiff should act in reliance on it. This may be done by producing an admission such as contained in the plea of guilty, where the indictment charged a similar false statement at another time, or it may be shown by any other false statements of the same general scope made at another time. Such evidence does not prove the substantive fact of falsity, but does tend to prove elements of knowledge and intention. Former and subsequent acts are admissible in evidence to show knowledge and intent as to like or similar acts.

***Id.*** at 16-17 (citations omitted). We may rely on cases predating the enactment of the Pennsylvania Rules of Evidence to the extent they are consistent with the rules. ***Commonwealth v. Aikens***, 990 A.2d 1181, 1185 n.2 (Pa. Super. 2010).

- 21 -

plaintiff, the defendant appealed, alleging the trial court erred by admitting evidence of three similar property transfers later that year by the defendant. *Id.* The ***Marshall*** Court affirmed the admission of the evidence, reasoning that the evidence of the similar fraudulent property transfers tended to establish a common purpose or design. ***Id.*** at 630.

Here, however, unlike the plaintiff in ***Marshall***, Appellant has not discussed any of the five regulatory actions or three settled customer disputes and explained how they were fraudulent or tended to establish a common purpose or design. ***See Arrington***, 86 A.3d at 842; ***Knofsky***, 154 A. at 16-17; ***cf. Marshall***, 72 A. at 629; ***see generally*** R.R. at 386-99a. Appellant repeats the phrase "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Appellant's Brief at 23. Appellant, however, simply does not articulate how any of the acts (private placements in the oil and gas industry and failure to supervise the sale thereof, sale of unregistered securities by unlicensed subordinates, and improper commission payments, ***see*** R.R. at 386a-99a), are similar to the actions that underlie Appellant's UTPCPL claim. ***See Arrington***, 86 A.3d at 842; ***Knofsky***, 154 A. at 16-17.

In any event, Appellant could not establish any such similarity. The regulatory actions and customer disputes are summarized by FINRA. ***See generally*** R.R. at 386-99a. The summaries lack, and Appellant does not elaborate on, any of the details of the disputed private offerings of oil and gas

securities or supervision of subordinates selling unregistered securities. ***See generally id.*** Although Appellant emphasizes that Newton voluntarily consented to the surrender of his FINRA license, Appellant did not explain the facts that led to the surrender or provide any additional detail about the events such that the FINRA report fell within the scope of Rule 404(b)(2). ***See Arrington***, 86 A.3d at 842.

Therefore, Appellant failed to establish the trial court erred in denying his motion *in limine* to admit the FINRA report under Rule 404(b)(2). It follows that his derivative arguments that such evidence could have been used to challenge Newton's credibility also fail.[19]

**2. Appellant's Evidentiary Issues Regarding the Thalacker Fund**

Lastly, Appellant claims that the trial court erred in prohibiting him from presenting evidence regarding Thalacker and Appellees' responsibility for Thalacker's alleged misdeeds. By way of background, as noted by the ***Hoak I*** Court, Appellant did not appear at the July 2009 arbitration hearing for his claims against Thalacker, and the arbitrator found in Thalacker's favor. The trial court entered an order dismissing all of Appellant's claims against Thalacker.

---

[19] Appellant also suggests that the exclusion of evidence to rebut matters in Appellees' case-in-chief prejudiced the court's consideration of Appellees' motion for nonsuit. As noted above, however, alleged errors during Appellees' case-in-chief cannot be said to have prejudiced Appellant as to the nonsuit entered on UTPCPL claim.

In the instant litigation, on September 8, 2017, Appellees filed a motion *in limine* to preclude relitigation of issues resolved in the Thalacker arbitration. Appellees argued that Appellant was collaterally estopped from relitigating any claims resolved by the arbitrator. The court agreed and granted Appellees' motion.

On appeal, Appellant raises two arguments. First, Appellant argues that the trial court erred by disregarding the doctrines of *respondeat superior* and vicarious liability in holding that the Newton Defendants were not necessary and indispensable parties to the Thalacker arbitration. Appellant's Brief at 46. In support, Appellant reiterates the argument he made in **Hoak II**: the Pennsylvania Securities Act prohibits independent contractor status. **Id.** at 44. Second, Appellant similarly argues that the court erred by excluding his claims against Thalacker on the basis of collateral estoppel and *res judicata*. **Id.** at 47, 52.

> This Court has explained collateral estoppel as follows:
>
> a collateral estoppel claim will succeed only with the concurrence of four conditions. Collateral estoppel applies when the issue decided in the prior adjudication was identical with the one presented in the later action, there was a final judgment on the merits, the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in the prior adjudication.

**Levitt v. Patrick**, 976 A.2d 581, 589 (Pa. Super. 2009) (citation omitted).

The law of the case doctrine is similar:

> The law of the case doctrine expresses the practice of courts generally to refuse to reopen what has been decided. The doctrine is composed of a collection of rules that not only promote the goal of judicial economy but also operate (1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end.

*Bienert v. Bienert*, 168 A.3d 248, 254 (Pa. Super. 2017) (citations omitted).[20] "As a general proposition, a court should not revisit questions it has already decided." *Id.* at 255 (brackets and citation omitted).

Here, we agree with the trial court that Appellees have fulfilled the required elements of collateral estoppel. Appellant is raising an issue that was resolved in *Hoak II*, there was a final judgment in *Hoak II*, Appellant was also a party in *Hoak II*, and Appellant litigated the issue in *Hoak II*. *See Hoak II* at 14-17. Because collateral estoppel applies, Appellant's claim fails. *See Levitt*, 976 A.2d at 589. Moreover, the law of the case doctrine bars relitigation of an issue finally resolved six years ago. *See Bienert*, 168 A.3d

---

[20] As the *Bienert* Court observed:

> Law of the case doctrine saves both litigants and the courts from duplications of effort. If permitted to argue and brief the same issue repeatedly during the course of the same litigation, some litigants would be indefatigable in their efforts to persuade or to wear down a given judge in order to procure a favorable ruling. Such use of clients' finances, legal counsels' time and energy, and judicial resources is wasteful from a systemic perspective.

*Bienert*, 168 A.3d at 254 (citation omitted).

at 254-55. Having discerned no error of law or abuse of discretion in the trial court's denial of Appellant's motion for a new trial, we affirm the judgment below.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/23/2019